**EXHIBIT "3"**



# Transcript of **Roger Clark**

**Date:** January 8, 2016

**Case:** Knox, et al -v- City of Fresno, et al

Planet Depos
Phone: 888-433-3767
Fax: 888-503-3767
Email: transcripts@planetdepos.com
Internet: <www.planetdepos.com>

Worldwide Court Reporting | Interpretation | Trial Services

1

1             UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF CALIFORNIA

3    _____x

4    JERRY WAYNE KNOX, et al.,      :

5                   Plaintiff,      :

6         v.                        :

7    CITY OF FRESNO, a municipal    :   Case No.

8    corporation; JERRY DYER,       :   1:14-cv-00799 EPG

9    Individually and in his        :

10   Capacity as Chief of Police    :

11   For the CITY OF FRESNO,        :

12                   Defendants.    :

13   _____x

14

15

16            DEPOSITION OF ROGER CLARK

17            SAN FRANCISCO, CALIFORNIA

18            FRIDAY, JANUARY 8, 2016

19                  9:13 A.M.

20

21

22

23   Job No. 100383

24   Pages 1 - 128

25   Reported by:  Anne M. Torreano, CSR, RPR, CCRR, CLR

Deposition of Roger Clark
Conducted on January 8, 2016

6

1    contains the materials that are listed under your

2    materials considered at page 2 of your report, and the

3    second disk I understand -- I've not seen before but I

4    have now are the officer-involved shooting files from

5    the Enriquez case that look like they go 05-00032

6    through 10-127.

7         And those are contained on a separate disk;

8    is that correct?

9         A.   Yes.

10        Q.   Okay.  And those were files that you

11   previously reviewed in a case called Enriquez vs.

12   City of Fresno?

13        A.   Yes.

14        Q.   And just so I understand the logistics,

15   several of those files are referenced in Exhibit 1,

16   your present Rule 26 report; correct?

17        A.   More than several.  There's 16.

18        Q.   Okay.  So 16 of the files that are on the --

19   I'll call it Enriquez disk are incorporated into this

20   Rule 26 report?

21        A.   Yes.

22        Q.   Okay.  And the materials that you relied upon

23   for those 16 cases that are in your current Rule 26

24   report are on this disk that -- from Enriquez;

25   correct?

Deposition of Roger Clark
Conducted on January 8, 2016

7

1      A.  Yes.

2      Q.  Okay.  Again, just for the record, I'll

3  reserve the right to maybe inquire further because I

4  haven't seen any of these Enriquez cases.  But

5  notwithstanding, we'll go ahead and proceed today.

6          Okay.  And somewhere I know in your c.v.

7  I have it, but just for the record, what's your hourly

8  rate in this case?

9      A.  $250 an hour for consultation and report and

10  $350 an hour for deposition testimony and trial

11  testimony.

12          MR. PRAET:  Trying to think of how to do

13  this.  I'd like to make these exhibits actually to the

14  depo.

15          Can you do that?

16          (DISCUSSION OFF THE RECORD.)

17          MR. PRAET:  All right.  We'll go back on the

18  record.

19          All right.  We just had an off-the-record

20  conversation trying to figure out the logistics of

21  retaining the two CDs that I've been provided today,

22  and I understand that we will be making -- and we'll

23  call it -- Exhibit 2 will be the disk labeled

24  "Materials Considered."

25          And just so the attorneys all have the

Deposition of Roger Clark
Conducted on January 8, 2016

8

1   password, my understanding is the password is KNOX

2   2015.  And that will be Exhibit 2.

3              (CLARK EXHIBIT 2 MARKED.)

4              MR. PRAET:  Exhibit 3 will be a CD, which is

5   labeled "OIS" but which contains all 16, I'm

6   understanding, of the Enriquez materials which are

7   referenced throughout Exhibit 1, which is Mr. Clark's

8   current Rule 26 report in this case, with the same

9   password of KNOX 2015.

10             And we have an agreement that the court

11  reporting service will not print out the materials on

12  either CD but simply provide copies of the CDs.

13             Is that correct?

14             MR. OVERSON:  That's all fine.  I'll just --

15  to clarify, the materials on the disk are the backup

16  material for officer-involved shootings from the

17  Enriquez case that resulted in a report in the

18  Enriquez case and then trial testimony.  And

19  Lieutenant Clark is relying on 16 of those same

20  shootings in this matter.  And although he did not

21  review all of this material, we are providing it to

22  Mr. Praet because it's backup for the conclusions that

23  are in his report.  But subject to that, we agree on

24  all of it.

25             MR. PRAET:  Okay.

Deposition of Roger Clark
Conducted on January 8, 2016

11

1    shooting incidents.

2            Is that on one of these disks?

3        A.  Yes.

4            MR. PRAET:  All right.  Back on the record.

5    BY MR. PRAET:

6        Q.  You indicated that the IA reports, criminal

7    investigation files from Fresno PD are on this disk of

8    materials you considered.

9            Do you have that disk in front of you as

10   well?

11       A.  No.

12       Q.  Okay.  I only see reference to four cases on

13   here, and I don't know if this is going to be a

14   problem if we all don't have the same disk.  But I

15   only see on this disk reference to 2012-070, 2012-103,

16   2013-049, and 2014-0017.  But I believe that there's

17   reference to more than that in your report.

18       A.  Let me reference you to one of those.  On

19   page 23 of my report, item No. 22, no OIS

20   investigation available.  That takes care of one of

21   the two.

22       Q.  Well, no.  That's one that nobody has.

23       A.  It's one of the six post-Enriquez that I put

24   in the report.

25       Q.  Right.  Okay.  So you're saying there's only

12

1    six cases that are post-Enriquez that are in your

2    current report?

3        A.   That's right.

4        Q.   Okay.  And I've listed four of them.  One of

5    them you said is the 2015 shooting that nobody has a

6    report for; right?

7        A.   That's right.

8        Q.   And what's the other one?

9        A.   Let's see if I can find it here.

10            I'm sure that that is going to be -- as I

11   remember, I could be wrong, page 7, item 15 there was

12   a no OIS number, status unknown.  That's the shooting

13   of the brother.

14            No, I'm sorry.

15       Q.   I'm sorry.  Page 7 of your report?

16       A.   Page 17.

17       Q.   Oh, 17.

18            MR. OVERSON:  My suspicion is the other one

19   is Enriquez, because I don't know that we ever got an

20   IA report, but I'm not --

21            THE WITNESS:  Oh, okay.  Then it's Enriquez,

22   which would be on item -- you're right.  On page 14,

23   item 13.  So it would be page 14.  Item 14?  No,

24   that's -- there's an OIS number.  But I don't think we

25   got -- there's no OIS number.

Deposition of Roger Clark
Conducted on January 8, 2016

14

1    listing, and it looks like that is correct.

2            MR. PRAET:  That it's the one on page 17?

3            MR. OVERSON:  Correct.  But there's no file

4    that we got from Figueroa.

5            MR. PRAET:  It is Figueroa, which you guys

6    have.  I mean you have, the law firm has.  You guys

7    are handling that case; right?

8            MR. OVERSON:  Well, in terms of for purposes

9    of this case, I don't know that we have that.  So

10   No. 15 and No. 22 of Lieutenant Clark's report are

11   the -- that we have listed as the two that don't have

12   an OIS.

13           MR. PRAET:  Okay.  So let me see if I can

14   consolidate this into one piece in the record.

15   BY MR. PRAET:

16       Q.  In your current Rule 26 report there are a

17   total of how many cases referenced?  Do you know?

18       A.  In this new report?

19       Q.  Yes, all inclusive.

20       A.  22.

21       Q.  22.  Okay.  Of those 22 cases, six of them

22   are post-Enriquez; correct?

23       A.  That's correct.

24       Q.  Okay.  Meaning 16 of them are the same as

25   what you had in Enriquez?

15

1     A.  Exactly.

2     Q.  Okay.

3     A.  That's correct.

4     Q.  And the six that you have post-Enriquez are

5  on this disk, and since there's not that many, I will

6  list them:  12-0070, 12-103, 13-049, 14-017, 14-00,

7  which we've established is the Figueroa case, and a

8  2015 shooting for which no one has the reports; is

9  that correct?

10     A.  That's right.

11     Q.  Okay.  Okay.  Now, on the disk of materials

12  considered, you included your item 7, which is your

13  deposition and trial testimony from the Enriquez case;

14  is that correct?

15     A.  Yes.

16     Q.  And I have that now on this disk, on the

17  materials considered?

18     A.  I'm assuming -- the disk was put together by

19  the firm, but I'm assuming that's there.

20     Q.  Yes, I believe it is.  Yes, I have here

21  deposition testimony from Enriquez on this disk, which

22  is item 7 in the current report, as well as it appears

23  your trial testimony from Enriquez.

24         Item 8 is your expert report from Enriquez,

25  which I have, and you rely upon that for this one;

Deposition of Roger Clark
Conducted on January 8, 2016

16

1    right?

2        A.  Yes.

3        Q.  Okay.  And then item 9, just so I'm sure I

4    have everything, is the defendant's response to

5    request for admissions in Enriquez; correct?

6        A.  Yes, and that should be on the disk as well.

7        Q.  Okay.  So from the Enriquez case, you relied

8    on items 7, 8 and 9 for the current report in this

9    Knox case; correct?

10       A.  That's correct.

11       Q.  Okay.  Got it.

12           On page 2 of your report in this case you

13   indicate that you're of the opinion that there are at

14   least 22 shootings by the Fresno Police Department in

15   the past ten years that were not reasonable and thus

16   unjustified; correct?

17       A.  Yes.

18       Q.  When does that ten years date back from?

19       A.  Back from the report date of November 6th,

20   2015.  So it would go to 2005.

21       Q.  I'm going to flip back and forth between

22   these two CDs is going to be the problem.

23           Well, for example, the first case on page 4

24   of your report is Case No. 06-0142; correct?

25       A.  I have a little sheet I listed them by name,

Deposition of Roger Clark
Conducted on January 8, 2016

17

1    but you are -- page 4 is 0142, and it's regarding

2    Shane Stone.

3         Q.   Okay.  But that's -- that's the 2006 case;

4    right?

5         A.   That is correct.

6         Q.   Okay.  That's on the -- we'll call it

7    Enriquez disk, right, that file?

8         A.   Yes.

9         Q.   Okay.  But you're relying, for example, on

10   that case for your opinion in this case; correct?

11        A.   Yes, everything that's listed in this report

12   is what I relied on, and that -- that begins, as you

13   know, with that case.  That's the first case listed.

14        Q.   So where did you get the information, for

15   example, on page 4, the '06 case, in order to

16   incorporate it into your current Rule 26 report in the

17   Knox case in 2015?

18        A.   Strictly from the Enriquez report.  It's a --

19   it was taken directly from the commentary in Enriquez,

20   that I listed in Enriquez.

21        Q.   And the commentary that you listed from

22   Enriquez is in the Enriquez report?

23        A.   That's my memory, yes.  I'd have to be

24   precise, but that's the way I worked the report, just

25   took the commentary for the 16 cases and moved them

Deposition of Roger Clark
Conducted on January 8, 2016

19

1      Q.   Okay.   But the summary that you include, for

2   example, on page 4, comes from the Enriquez case?

3      A.   That's correct.

4      Q.   Well, rather than go through them all, so

5   that would be true for 16 of the 22 cases that you

6   reference in your current Rule 26 report in Knox are

7   contained only on the -- call it Enriquez disk?

8      A.   Yes.

9            MR. OVERSON:   That is the backup files that

10   Lieutenant Clark relied upon in the Enriquez case are

11   on the disk.   Is that the point you're trying to --

12            MR. PRAET:   Yeah, I'm just trying to figure

13   out where do I get the information to evaluate his

14   opinions that are basically a page each?   I don't have

15   the backup material until today for 16 of the cases

16   that are in the current report.   Right?

17            MR. OVERSON:   Actually, you do, because you

18   represent the City of Fresno and this all comes from

19   the City of Fresno's files.   And when you got Mr. --

20   Lieutenant Clark's report, of course you had access to

21   all of those files.

22            So we don't agree with that.   However, as we

23   discussed off the record, Bruce, if you need more time

24   to look at these files and you need more time with

25   Lieutenant Clark in light of that review, we would be

Deposition of Roger Clark
Conducted on January 8, 2016

21

1      A.   A list of all the shootings?

2      Q.   Yeah, from 2009 through 2014.

3      A.   I don't know if I got all of the shootings.

4      Q.   I'm not talking about the files themselves.

5  Just a list that identifies -- I think there was 51 or

6  54 shootings from 2009 through 2014.

7           Do you recall seeing that?

8      A.   I think that's referencing the very first

9  line of page 2 that there were 54 officer-involved

10  shootings --

11     Q.   Right.

12     A.   -- from '05 to '10.  That's the list I saw.

13     Q.   Okay.  I get that's what you saw in the

14  Enriquez case.  My question is we produced a list in

15  the Knox case for shootings from 2009 through 2014,

16  and there was -- it was all pursuant to Magistrate

17  Judge Austin, and then plaintiffs were allowed to

18  select ten of those cases.

19           Did you see that list?

20     A.   I didn't.  I don't remember seeing -- I don't

21  remember seeing it.

22           MR. PRAET:  Wes, do you know if he got that?

23           MR. OVERSON:  I don't know that he did.

24           MR. PRAET:  You have it; right?  I mean,

25  that's the -- you recall that that's the one that then

Deposition of Roger Clark
Conducted on January 8, 2016

30

1          MR. OVERSON:  He's not supposed to be
2     deposing us.
3          MR. PRAET:  Right, and if you want to take a
4     break with your attorneys or something, I'm just
5     trying to find out --
6          THE WITNESS:  Well, then let's do the break
7     and cut to the chase.
8          MR. PRAET:  All right.  Why don't we take a
9     couple-minute break and maybe you can help him,
10    somebody, and so he can just give me an answer of the
11    number that were reviewed to come up with the six
12    post-Enriquez.
13         THE WITNESS:  Besides that, it's been an hour
14    anyway, so ...
15         MR. PRAET:  Time flies when you're having
16    fun.
17         (RECESS TAKEN.)
18         MR. PRAET:  Back on the record.
19    BY MR. PRAET:
20      Q.  All right, Mr. Clark.  You had an
21    off-the-record conversation during the break.  The
22    issue that's pending right now is you've identified
23    six post-Enriquez shooting files that you believe were
24    unjustified or preventable.
25         My question to you is, what other files did

Deposition of Roger Clark
Conducted on January 8, 2016

31

1   you review beyond the six post-Enriquez cases?

2        A.   And the answer is in terms of the paperwork,

3   the six, only the six.   The result of that was

4   extensive conversations with Mr. González.   I could be

5   more precise if you want.

6        Q.   Well, and I may ask you to be, but what I

7   think I heard you just say is that Mr. González gave

8   you six files post-Enriquez, all of which you believed

9   were preventable or outside of standards?

10       A.   No, that's not correct.

11       Q.   Okay.

12       A.   He gave me six files at my request after

13   extensive conversations regarding new material that he

14   had in his possession, and having gone through that

15   with him, knowing he's very competent, and discussing

16   the issues of each one of the cases, then he sent me,

17   at my request, the six.

18       Q.   Okay.   Where did you get those six cases --

19   from what pool did you get those six cases to request

20   them?

21       A.   Well, there was a -- there were a number of

22   other cases he mentioned that I -- and I can't

23   remember them by name, but that he said he had that

24   were post-Enriquez.   I don't know how many.   I do

25   remember that as he -- as we discussed each one in

Deposition of Roger Clark
Conducted on January 8, 2016

34

1        A.  Well, I --

2            MR. OVERSON:  There's no question.  Let him

3    finish.

4            THE WITNESS:  Yeah, you're right.

5    BY MR. PRAET:

6        Q.  Of that pool of no more than a dozen cases,

7    you felt confident that six of them were preventable or

8    outside acceptable police practices; correct?

9        A.  Based on the conversations I requested they be

10   sent to me so I could verify and look at it in more

11   detail, yes.

12       Q.  So the reverse of that is, based on your

13   conversation with Mr. González, you felt that as many

14   as six of the no more than dozen cases arguably fell

15   within the parameters of acceptable police practices.

16       A.  Either that or it wouldn't be a fair statement

17   based on the material provided.  And I excluded that

18   for the sake of I could say professional fairness.

19       Q.  Okay.  You've already mentioned the protective

20   order in the Enriquez case; right?

21       A.  Yes.

22       Q.  You knew that you were under that protective

23   order; right?

24       A.  Yes.

25       Q.  I'll go ahead and make Exhibit 5 a copy of the

35

1    protective order from the Enriquez case.

2          (CLARK EXHIBIT 5 MARKED.)

3    BY MR. PRAET:

4       Q.   You understood during the Enriquez case that

5    the materials that you received fell under the

6    protective order in that case?

7       A.   I did.

8       Q.   You got a copy of the protective order when

9    you were in the Enriquez case?

10      A.   I certainly did.   I believe I signed it.

11      Q.   Okay.   In fact, in **your de**position, which you

12   included in the materials that you relied on in this

13   case, you acknowledged that the reports from 2005

14   through 2009 that you were provided with and relied

15   upon in the Enriquez case were subject to this

16   protective order; correct?

17      A.   Yes.

18      Q.   You indicated somewhere today that you

19   destroyed those files?

20      A.   Oh, yes, they're destroyed.   I have no file

21   on Enriquez at all.

22      Q.   Okay.   But you included the shootings that

23   you relied upon and were provided from the Enriquez

24   case in your current Rule 26 report; correct?

25      A.    Information from the Rule 26 report in

Deposition of Roger Clark
Conducted on January 8, 2016

36

1      Enriquez.  You're correct.

2          Q.  In fact, 16 of the cases you relied upon in

3      this Knox case today came from the Enriquez file;

4      correct?

5          A.  Yes.

6          Q.  None of the actual files from the Enriquez

7      case 2005 through 2009 shootings were ever admitted

8      into evidence in that case, were they?

9          A.  I don't know.  I don't -- I don't know.  I

10     know I -- when I was deposed, I brought the files.

11     When I was deposed.

12         Q.  And you testified in trial, in fact, you'd

13     given us a copy of your testimony in the materials

14     that you relied upon from the Enriquez case; correct?

15         A.  That's correct.  Yes, I did.

16         Q.  You still have your deposition from that

17     case?

18         A.  I have a copy of my deposition.  I have a

19     copy of the testimony during the trial.

20         Q.  Okay.  We'll make it Exhibit 6.  Exhibit 6

21     will be a copy of the exhibit list from the Enriquez

22     case.  You're welcome to look at it, but I'll

23     represent to you that none of the files that are

24     referenced or contained in the current Rule 26 report

25     were ever admitted into evidence in the Enriquez

Deposition of Roger Clark
Conducted on January 8, 2016

37

1    trial.

2           MR. OVERSON:  This is -- speculation,

3    foundation.  There's no question.

4           THE WITNESS:  Okay.

5           (CLARK EXHIBIT 6 MARKED.)

6    BY MR. PRAET:

7       Q.  Yeah, I'll pose -- yes, I will pose the

8    question to you now.

9           During your Enriquez testimony at trial, you

10   never presented to the jury any of the reports that

11   are listed in your current Rule 26 report; correct?

12      A.  I was never asked.

13      Q.  And that's fine.

14      A.  I already answered the question posed.  And

15   as I remember and my review of the testimony is that

16   that's correct.

17      Q.  Okay.  And my only point is that none of the

18   reports that are referenced in this current Knox

19   Rule 26 report were ever admitted into evidence in the

20   Enriquez case, correct, at least as far as during your

21   testimony?

22      A.  Not during my testimony.

23      Q.  Okay.

24      A.  I commented on the cases.

25      Q.  Obviously here's my dilemma:  You rely on 16

Deposition of Roger Clark
Conducted on January 8, 2016

38

1   files, case files from the Enriquez case in the

2   current Knox Rule 26 report; correct?

3       A.  Yes, I've relied on them.

4       Q.  Okay.

5       A.  As reported in my -- as commented on and

6   reported in the Enriquez Rule 26.

7       Q.  Right.  And you understood that the

8   protective order in the Enriquez case required that

9   those files be kept confidential outside of the

10  Enriquez case; correct?

11      A.  Well, certainly.

12      Q.  Okay.

13      A.  I destroyed them.

14      Q.  I understand, but you continue to rely upon

15  them in this case, the Knox file.

16      A.  Well, the commentary comes from the Rule 26.

17      Q.  And the Rule 26 report in Enriquez came from

18  those 54 whatever files that fell under the protective

19  order; correct?

20      A.  Well, the files were -- came under the

21  protective order.

22      Q.  Right.

23      A.  As the files in this case come under a

24  protective order.

25      Q.  Correct.  The only knowledge you have of the

Deposition of Roger Clark
Conducted on January 8, 2016

39

1    16 let's call them Enriquez files that are included in

2    the Knox case came from the terms that were provided

3    to you under the protective order; correct?

4         A.   At that time.  As were given to me at that

5    time and as remained in my brain, yes.

6         Q.   Right.  You didn't know anything about those

7    16 cases other than based on the materials you have

8    been provided in the protective order; correct?

9              MR. OVERSON:  Let me object.  I think

10   Enriquez might have been one of those.  There may have

11   been other public records of those 16.  So I just

12   caution you on that.

13   BY MR. PRAET:

14        Q.   And I'll put aside Enriquez because obviously

15   that is a case that went to trial, and all the facts

16   of that case were presented in trial.

17              So if Enriquez is one of the 16 cases relied

18   on in this Knox case, at least 15 of those files, the

19   '05, '06 cases, your only familiarity with those files

20   came from the materials provided to you under the

21   protective order; correct?

22        A.   That's how I got them.  The files were

23   provided per the discovery and part of a protective

24   order.

25        Q.   And you understood that those 15 or 16 files

Deposition of Roger Clark
Conducted on January 8, 2016

40

1   that are referenced in your Knox report were to be

2   considered confidential under the protective order

3   that you signed; correct?

4       A.  I have considered them as such since the time

5   I signed the protective order.

6       Q.  You've actually previously relied upon

7   information protected under a protective order in

8   another case, haven't you?

9       A.  I had -- it's very common to have protective

10  orders in cases and more often than not, I would say.

11      Q.  Okay.  So you remember Olivas versus Fontana?

12      A.  I remember that case.

13      Q.  Okay.  Judge Larson down in Central District

14  actually issued an order in that case that you had

15  improperly relied upon information from a previous

16  case in which there was a protective order, didn't he?

17      A.  Judge Larson has given me direct

18  instructions, as I have told you before in other

19  depositions, not to discuss it in any way, and that's

20  what I'm doing now.

21      Q.  You don't have a copy of that order from

22  Judge Larson, do you?

23      A.  I do not.

24      Q.  Okay.

25      A.  And I do not -- will not comment further and

Deposition of Roger Clark
Conducted on January 8, 2016

47

1      Q.  Two cases?

2      A.  Two cases.

3      Q.  Okay.  So 99.9 percent of the time you only

4  have taken cases for attorneys suing police?

5      A.  In civil cases, that's correct.  I don't know

6  if it's -- if it works out to 99, but it's probably

7  close to that.

8      Q.  When was the last time you took a case for an

9  attorney defending the police?

10     A.  I think that probably would be the Mejia

11  matter.  Just a minute.  That would be July 7th of

12  2014 at a civil service hearing regarding --

13     Q.  Okay.  That's civil service?

14     A.  Well, I represented a -- I was representing

15  an officer.  Incidentally, he's the one who arrested

16  Mel Gibson, the actor Mel Gibson and was fired for it.

17  So that was -- and because of that hearing, he was

18  restored, so ...

19     Q.  Let me ask you to answer the question.

20        MR. OVERSON:  You interrupted him, Bruce.

21        THE WITNESS:  I think I did answer the

22  question, but go ahead.

23  BY MR. PRAET:

24     Q.  My question is, when is the last time -- you

25  know, to make sure you understand, when is the last