1  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
2  WESLEY E. OVERSON (CA SBN 154737)
   WOverson@mofo.com
3  ROBERT J. ESPOSITO (CA SBN 267031)
   REsposito@mofo.com
4  SABRINA A. LARSON (CA SBN 291661)
   SLarson@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California  94105-2482
   Telephone:  415.268.7000
7  Fax:  415.268.7522

8  Attorneys for Plaintiffs

9                    UNITED STATES DISTRICT COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11                            FRESNO DIVISION

| | |
|---|---|
| DORIS RAY KNOX; JERRY WAYNE KNOX; JEREMY EDWARD MOORE, individually and as successor-in-interest to VERONICA LYNN CANTER, deceased,<br><br>            Plaintiffs,<br><br>    v.<br><br>CITY OF FRESNO, a municipal corporation; EDWARD CHRISTOPHER LOUCHREN, individually and in his capacity as a police officer for the CITY OF FRESNO; DOUGLAS EDWARD COX, individually and in his capacity as a police officer for the CITY OF FRESNO,<br><br>            Defendants. | Case No.   1:14-CV-00799-EPG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF FRESNO'S MOTION FOR CONTEMPT AND REQUEST FOR SANCTIONS**<br><br>Date: May 27, 2016<br>Time: 10:00 a.m.<br>Courtroom 10, 6th Floor<br><br>Judge:   Honorable Erica Grosjean<br><br>Trial Date: June 14, 2016<br>Complaint filed:  May 27, 2014 |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................................................ii
II.  SUMMARY OF OPPOSITION................................................................................................ 2
III. STATEMENT OF FACTS ....................................................................................................... 3
IV.  ARGUMENT ............................................................................................................................ 5
     A.   Legal Standard .............................................................................................................. 5
     B.   Lt. Clark Did Not Violate the Enriquez Protective Order............................................. 6
          1.   Lt. Clark's Enriquez Expert Report Is Not "Confidential
               Information" Under the Protective Order. ........................................................ 6
          2.   The High Level Summaries Contained in Lt. Clark's Enriquez
               Expert Report Were Publicly Aired at the Enriquez Trial. .............................. 7
     C.   Plaintiffs' Counsel Did Not Violate the Enriquez Protective Order As a
          Result of the Inadvertently Retained OIS Files............................................................. 9
V.   CONCLUSION. ........................................................................................................................ 9

# TABLE OF AUTHORITIES

**CASES**

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) .................................................................................................... 7

*Enriquez v. City of Fresno, USDC Case No. 1:10-cv-00581 AWI* ......................................... passim

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
    10 F.3d 693 (9th Cir. 1993) ................................................................................... 6, 9

*Labor/Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*,
    564 F.3d 1115 (9th Cir. 2009) .................................................................................. 6

*Zambrano v. City of Tustin*,
    885 F.2d 1473 (9th Cir. 1989) .................................................................................. 7

**OTHER AUTHORITIES**

7 James Wm. Moore et al., *Moore's Federal Practice* § 37.51[7], at 37–109 ............................... 6

Fed. R. Civ. P. § Rule 26(c) .................................................................................................. 2, 7

**I.      INTRODUCTION**

There is no basis for awarding sanctions because Plaintiffs and Lt. Clark have made a good faith effort to destroy the protected records from the *Enriquez* case, and neither Plaintiffs nor Lt. Clark have used any of the police records that were subject to the protective order in *Enriquez*. Moreover, there is nothing in Lt. Clark's report that would meet that standard for "Confidential" documents set by the protective order: "documents for which the designating party would be entitled to have protected from public disclosure by Court order under Rule 26(c) of the Federal Rules of Civil Procedure and the relevant case law."[1] And finally, this dispute is largely mooted by the fact that Plaintiffs have agreed to limit Lt. Clark's testimony to cases that were publicly discussed at the *Enriquez* trial and to files of shootings that were produced in this case. There is nothing in the protective order in *Enriquez* that would bar such testimony.

**II.     SUMMARY OF OPPOSITION**

Plaintiffs' expert, Lt. Roger Clark, produced an expert report regarding officer-involved shootings ("OIS") to show a pattern and practice of unlawful force by the Fresno Police Department, including the fatal shooting of Plaintiffs' daughter and mother, Veronica Canter. Lt. Clark produced a similar report in *Enriquez v. City of Fresno, USDC Case No. 1:10-cv-00581 AWI*, wherein the jury found that there was a pattern of unlawful shootings. Some of the shootings that he relies on in this case were also in his report in *Enriquez*. However, Lt. Clark ***did not*** receive any files designated "Confidential" under the *Enriquez* protective order in this case. Lt. Clark merely relied on his trial testimony from that case and re-used a portion of his *Enriquez* report, which contains his own opinions and high-level summaries of Fresno shootings.

Fresno claims that Lt. Clark's summary of shootings from the *Enriquez* case is "Protected Information" that could not be used in this case. But there is nothing in Lt. Clark's report that would be entitled to protection under Rule 26(c), as required by the protective order in that case.

---

[1] (Declaration of Bruce Praet in support of Defendant City of Fresno's Motion for Contempt and Request for Sanctions ("Praet Decl."), Ex. 2, Dkt. 56-2 (*Enriquez* Protective Order).)

(Praet Decl. Ex. 2 at ¶ 2, Dkt. No. 56-2.)  Indeed, Fresno attached Lt. Clark's report to this publicly filed motion for sanctions.  (*See* Praet Decl. Ex. 4, Dkt. No. 56-4.)  Thus, at Fresno's own doing, the expert report is now sitting in the public record.  It cannot argue that the information would be protected under Rule 26.

This motion is not about compliance with a protective order; it is a tactical effort to exclude Lt. Clark, who has successfully testified against Fresno in the past, from again testifying about Fresno's pattern of unlawful shootings.

Plaintiffs have offered to limit Lt. Clark's testimony to 10 shootings other than the shooting of Veronica Canter, seven of which Lt. Clark publicly testified about in *Enriquez*, and the remaining three of which occurred following *Enriquez* and are therefore not in dispute.  There is no basis for preventing Lt. Clark from testifying about these 10 shootings.[2]

Finally, despite diligent, good-faith efforts to destroy all such files at the end of *Enriquez*, an electronic copy of police shooting files produced in *Enriquez* was recently discovered in Morrison & Foerster LLP's internal storage system.  Plaintiffs' counsel has not opened any of these files except one or two to confirm that the documents were what their file names suggested they were.  Lt. Clark has not seen any of them in this case.

Because (a) neither Lt. Clark nor Plaintiffs' counsel have used or relied upon any confidential documents produced under the *Enriquez* protective order in this case, and (b) Lt. Clark's testimony will be based on his public testimony and documents produced in this case, Fresno's motion should be denied.

**III.   STATEMENT OF FACTS**

In April of 2010, the family of Steven Vargas filed a lawsuit against the City of Fresno arising out of the fatal shooting of Mr. Vargas by a Fresno police officer.  *Enriquez v. City of*

---

[2] Defendants incorrectly argue that Lt. Clark had "no other source" for the information other than the files produced in *Enriquez*.  That is not accurate.  His trial testimony covered the seven pre-*Enriquez* shootings at issue and there is nothing that would prevent him from relying on that public testimony, or, for that matter, on his publicly filed expert report from *Enriquez*.  (*See* Declaration of Arturo J. González ("González Decl.") ¶¶ 6, 7, n.2, Ex. C.)

*Fresno*, USDC Case No. 1:10-cv-00581 AWI.  During that litigation, Fresno produced OIS files relating to 51 shootings, and Lt. Clark produced an expert report concluding that 19 of the 51 shootings were not reasonable and thus unjustified.  A trial was held before Judge Anthony W. Ishii in December 2011, and the plaintiffs offered testimony by Lt. Clark on 10 of the shootings covered in his report to show that Fresno was municipally liable due to its custom and practice of shooting suspects without justification. (González Decl. ¶ 6, Ex. C.)  Lt. Clark was examined by both parties about the underlying facts and his opinions regarding those shootings. (*Id.*)  The jury issued its verdict on December 21, 2011, finding that the Fresno police officer had used excessive or unreasonable force and that the City of Fresno was municipally liable.  (*Id.* ¶ 2.)

At the end of the *Enriquez* case, Plaintiffs' counsel deleted the OIS files produced by Fresno and instructed Lt. Clark to do the same. (*Id.* ¶¶ 3, 5.)  All hard copy files were deleted, and electronic copies were deleted from the discovery folders on the Morrison & Foerster systems.  (*Id.* ¶ 3, Ex. A; Declaration of Robert Esposito ("Esposito Decl.") ¶ 4.)  Lt. Clark deleted all such files as well, and retained only his expert report.  (Declaration of Wesley Overson ("Overson Decl.") ¶ 7, Ex. A at 35:11-21, 15:11-16:10.)  Counsel for the parties agreed that trial and deposition exhibits did not have to be destroyed, which was confirmed in writing.  (González Decl. ¶ 3, Ex. A.)

When this case began, undersigned counsel were unaware that any electronic copies of Fresno OIS files remained on their system.  During the discovery phase of this case, Plaintiffs asked Fresno to produce OIS files dating back to March 7, 2007, including many of the files produced in *Enriquez*.  Fresno objected that it would be too burdensome to produce all of those records.  Plaintiffs filed a motion to compel, and the parties attended a telephonic conference with Magistrate Judge Austin on July 24, 2015.  (*See* Dkt. No. 41.)  Defendants argued that it would be burdensome to reproduce all of the files that were produced in *Enriquez*.  At the conclusion of this call with the Magistrate, Plaintiffs agreed that since they were already familiar with the pre-*Enriquez* shootings, they would focus their discovery efforts on more recent shootings.  Based on this agreement, Plaintiffs withdrew their motion to compel. (*See* Dkt. No. 42.)  Accordingly, Lt. Clark relied exclusively on his trial testimony and expert report from *Enriquez* for the pre-

4

*Enriquez* shootings, and on the files that Fresno produced in this case for the post-*Enriquez* shootings. (González Decl. ¶ 6.) During his work on this case, Lt. Clark never saw any of the OIS files produced during the *Enriquez* case. (*Id.*; Esposito Decl. ¶ 8.) Similarly, Plaintiffs' counsel have not accessed any of these files during this case. (González Decl. ¶ 9; Overson Decl. ¶ 4; Esposito Decl. ¶ 7; Declaration of Sabrina A. Larson ("Larson Decl.") ¶ 3.)

While working on this matter, an associate discovered on the firm's network drive—four layers beneath the top level *Enriquez* "Discovery" folder—a folder apparently containing the OIS investigations that had been sent to Lt. Clark during the *Enriquez* litigation. (Esposito Decl. ¶ 5.) This discovery was unexpected, as the folder was located under a different directory than the one used to hold document productions from Fresno, all of which had been emptied at the conclusion of the *Enriquez* case per instructions from counsel. (*Id.* ¶¶ 4-6.) Plaintiffs' counsel have not looked at these files in this case, apart from confirming that the file-names appear to correspond to the shootings that Lt. Clark relied upon in *Enriquez*. (*Id.* ¶ 7.) The files were copied onto a CD and provided to Defendants' counsel at Lt. Clark's deposition. (Esposito Decl. ¶ 9; Overson Decl. ¶ 5.) Lt. Clark never saw these files and did not know until his deposition that they existed. (Overson Decl. ¶ 7, Ex. A at 18:6-11; Esposito Decl. ¶ 8-9.)

Lt. Clark was deposed on January 8, 2016, and Defendants' counsel questioned Lt. Clark regarding his reliance on shootings addressed in his *Enriquez* expert report. Lt. Clark testified that at the conclusion of the *Enriquez* trial, he destroyed all OIS files in his possession and that his only sources of information in this case for shootings that were raised in the *Enriquez* litigation were his *Enriquez* deposition and trial testimony, his *Enriquez* expert report, and Fresno's *Enriquez* discovery responses. (Overson Decl. ¶¶ 6-7, Ex. A at 24:18-25:6, 35:11-21; 15:11-16:10; *see* Praet Decl. Ex. 3, Dkt. No. 56-3.)

## IV. ARGUMENT

### A. Legal Standard

A party asserting contempt for violation of a court order must establish that the accused party "'(1) [] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence.'"

5

1  *Labor/Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Although there is no *per se* "good faith" exception, the Ninth Circuit specifically stated in *Dual-Deck* that "a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *In re Dual–Deck Video*, 10 F.3d at 695 (internal punctuation and quotations omitted). "Any doubts as to whether these requirements have been met in a particular case must be resolved in favor of the party accused of the civil contempt." 7 James Wm. Moore et al., *Moore's Federal Practice* § 37.51[7], at 37–109 (footnote omitted).

Courts also have inherent power to impose attorneys' fees against counsel, but only in cases of "bad faith litigation or willful disobedience of court rules or orders." *Zambrano v. City of Tustin*, 885 F.2d 1473, 1481–82, 1485 (9th Cir. 1989) (citation omitted). Such sanctions should be reserved only for "serious breaches," *id.* at 1485, and the Supreme Court has cautioned that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

**B.    Lt. Clark Did Not Violate the *Enriquez* Protective Order.**

Lt. Clark relied solely on his *Enriquez* trial testimony, his *Enriquez* expert report, and files produced in this matter to formulate his report in this case. Lt. Clark neither retained nor viewed any OIS files produced by Fresno in the *Enriquez* case. The only issue as to Lt. Clark is thus whether his re-use of his *Enriquez* expert report in this case is prohibited by the protective order in that case.

**1.    Lt. Clark's *Enriquez* Expert Report Is Not "Confidential Information" Under the Protective Order.**

Fresno clearly does not consider the re-used content from the *Enriquez* report to be "Protected Information" under the *Enriquez* protective order, as it ***publicly filed an unredacted copy of the report with its instant motion for sanctions.*** (*See* Praet Decl. Ex. 4, Dkt. No. 56-4.) Under the protective order, if Fresno considered this material confidential, it was required to file

1   it under seal. (Praet Decl. Ex. 2 at ¶ 9, Dkt. No. 56-2 ("All Protected Information filed with the
2   Court for any purpose shall be filed and served under seal in accordance with Local Rule 141.").)
3       Fresno did not attempt to file the report under seal because the summaries are too high-
4   level in nature to violate the protective order. Fresno's OIS records for each shooting number in
5   the hundreds of pages. Lt. Clark's summaries, by contrast, amount to a few lines of information
6   providing the essential events surrounding the shooting. (*See, e.g.*, Praet Decl. Ex. 4 at 44-63,
7   Dkt. No. 56-4.) The protective order defines "Confidential" documents as "documents for which
8   the designating party would be entitled to have protected from public disclosure by Court order
9   under Rule 26(c) of the Federal Rules of Civil Procedure and the relevant case law." (Praet Decl.
10  Ex. 2 at ¶ 2, Dkt. No. 56-2.) Fresno could not have designated such high-level summaries
11  "Confidential" because the facts at that level of extraction are well within the realm of public
12  knowledge and would not be protectable under Rule 26(c). The protective order expressly
13  defines "Protected Information" as "Documents designated as 'Confidential' or 'Confidential -
14  Counsel Only' . . . and produced by parties to this action." (Praet Decl. Ex. 2 at ¶ 1, Dkt. No. 56-
15  2.)
16      In sum, Lt. Clark's expert report is not a "Confidential" document. The report contains
17  Lt. Clark's own opinions and only high-level summaries of the facts underlying the shootings.
18  There is nothing in the summaries remotely confidential that would warrant a protective order
19  under Rule 26. (*See generally* Praet Decl. Ex. 4, Dkt. No. 56-4.) Moreover, Lt. Clark's report
20  was not "produced by parties" to the *Enriquez* litigation, a requirement for the document to be
21  considered confidential information under the *Enriquez* protective order. Finally, Lt. Clark's
22  report, as a deposition exhibit, was exempted from destruction pursuant to agreement of the
23  parties at the conclusion of the *Enriquez* litigation. (González Decl. ¶ 3, Ex. A.)

        **2.    The High Level Summaries Contained in Lt. Clark's *Enriquez* Expert Report Were Publicly Aired at the *Enriquez* Trial.**

26      Contrary to Defendants' suggestion, all seven of the *Enriquez* shootings that Plaintiffs are
27  proposing to use at the trial in this case were the subject of testimony by Lt. Clark at the public
28  *Enriquez* trial before Judge Ishii. (*Id.* ¶ 6, Ex. C.) There was no order during or at the conclusion

of trial that any portion of the record be sealed. (*Id.* ¶ 3, n.1.) This testimony eliminates any doubt that the substance of Lt. Clark's report is public. For instance, Lt. Clark testified, in part, as follows regarding the facts surrounding the shooting of S. Muhammad, one of the seven shootings that Plaintiffs would like to reference in this case:

> Q. Case number six, Salahuddin Muhammad. July 21, 2009. This is the person who stopped at a red light, but he went a little bit too far, and so he ended up being partially on the railroad tracks in front of the line where he was supposed to stop, and that's how this all started. Tell us about that.
> A. This is a traffic violation, and Salahuddin -- I'll call him Mr. Muhammad. He's in a rented vehicle, and he has an acquaintance, not a girlfriend, but a friend that's a passenger in the vehicle. And he's apparently on his cell phone. He's not driving very well, and he -- and the officer that gets behind him, solo officer, attempts to pull him over pursuant to this violation at the intersection. He apparently steps on the gas and goes a short distance and crashes into a fence. And then he jumps out of the vehicle, the female passengers remains. And he runs up to the fence, and allegedly while he's on the fence -- and by the way, the officer pulls up, gets out, forgets that the car is not in park, gets back in, puts it in park, and gets out again. By that time, Muhammad is on the fence allegedly, and the officer says has a plastic bag in one hand and a gun in the other. And while on the fence turns the gun sideways in his direction, and the officer fires -- fires one shot. [¶] Mr. Muhammad jumps over the fence, the officer pursues, goes over the fence and a distance from the fence fires another round at him allegedly because he still has this gun. And then he -- Mr. Muhammad gets out of the control of the officer view, and he's apprehended by other officers in the area, and there is no gun.
> Q. And there was a search for a gun, and they couldn't find one along the path where he ran?
> A. Yes, . . .
> Q. And the only thing found on Mr. Muhammad when the police arrested him was a keyless remote control device with a car rental tag; is that right?
> A. Yes.

(González Decl. Ex. C at 407-409; *see* Case 1:10-cv-00581-AWI –BAM, Dkt. No. 167 (minutes noting testimony of Roger Clark).)[3] This trial testimony is as detailed or more than the high level summary of the Mohammad OIS included in Lt. Clark's report. (*See* Praet Decl. Ex. 4 at 47, Dkt. No. 56-4.) This testimony, combined with Defendants' public filing of the Clark report, make clear that there is nothing "confidential" at issue in this motion.

---

[3] Defendants are simply wrong when they state that Lt. Clark "never testified about" the seven cases at issue. (Defendants' Notice and Motion for Contempt for Violation of Protective Order with Request for Sanctions ("Mot.") at 3:21.) What Lt. Clark said in deposition was that the actual investigative "reports" were not "admitted into evidence" during his testimony, but he made it clear that "I commented on the cases." (*See* Praet Decl. Ex. 3 at 37:9-24.)

In short, Lt. Clark did not violate the *Enriquez* protective order by relying on his trial testimony and reusing a portion of his old expert report. Moreover, Defendants have no valid objection to Plaintiffs' offer to limit their testimony in this case to the seven shootings discussed at the *Enriquez* trial.

### C. Plaintiffs' Counsel Did Not Violate the *Enriquez* Protective Order As a Result of the Inadvertently Retained OIS Files.

"'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." *In re Dual–Deck Video*, 10 F.3d at 695. Here, there has been substantial compliance with the *Enriquez* protective order. Following the conclusion of the *Enriquez* case, the lead attorneys gave instructions to the associates and paralegals on the matter for all physical and electronic copies of the documents marked "Confidential" to be destroyed, and a diligent and good faith effort to do so was undertaken. (González Decl. ¶¶ 3, 10.) The files that inadvertently escaped deletion were so far buried in an electronic sub-folder from the *Enriquez* matter that they went undetected for roughly four years, including over a year and a half after the instant action was filed. (Esposito Decl. ¶ 6.) As noted above, Plaintiffs' attorneys in this case have not viewed the electronic OIS files from *Enriquez* that were found in this case. (González Decl. ¶ 9; Overson Decl. ¶ 4; Esposito Decl. ¶ 7; Larson Decl. ¶ 3.) Following the unexpected discovery of these files, the files were left in place, a copy was produced to Defendants' counsel, and no mention of them was made to Lt. Clark. (Esposito Decl. ¶¶ 8-9.)

### V. CONCLUSION.

Neither Lt. Clark, nor Plaintiffs' counsel, have used or relied upon any documents produced by Fresno and designated "Confidential" under the *Enriquez* protective order. Separately, counsel substantially complied with the protective order by deleting all paper and electronic copies of which they were aware and could locate on their system at the end of *Enriquez*. The failure to delete a digital copy of the OIS files in an unexpected location was inadvertent, and no use of those files has been made in this case.

1  Plaintiffs have proposed limiting their "pattern and practice" argument to 10 identified shootings, seven of which are in the public domain as a result of the *Enriquez* trial and three that were produced in this case. Therefore, no revisiting of discovery issues or protective order compliance is implicated by the use of these 10 shootings at trial.

For all of these reasons, Defendants' motion should be denied.

Dated: May 13, 2016

ARTURO J. GONZÁLEZ
WESLEY E. OVERSON
ROBERT J. ESPOSITO
SABRINA LARSON
MORRISON & FOERSTER LLP


By:   */s/ Arturo J. González*
      ARTURO J. GONZÁLEZ

Attorneys for Plaintiffs