ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
WESLEY E. OVERSON (CA SBN 154737)
WOverson@mofo.com
ROBERT J. ESPOSITO (CA SBN 267031)
REsposito@mofo.com
SABRINA A. LARSON (CA SBN 291661)
SLarson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  415.268.7000
Fax:  415.268.7522

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| DORIS RAY KNOX; JERRY WAYNE KNOX; JEREMY EDWARD MOORE, individually and as successor-in-interest to VERONICA LYNN CANTER, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF FRESNO, a municipal corporation; EDWARD CHRISTOPHER LOUCHREN, individually and in his capacity as a police officer for the CITY OF FRESNO; DOUGLAS EDWARD COX, individually and in his capacity as a police officer for the CITY OF FRESNO,<br><br>Defendants. | Case No.      1:14-CV-00799-EPG<br><br>**PLAINTIFFS' TRIAL BRIEF**<br><br>Judge:     Honorable Erica Grosjean<br><br>Trial Date: June 14, 2016<br>Complaint filed:  May 27, 2014 |

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3   TABLE OF AUTHORITIES ........................................................................................ii

4   I.   INTRODUCTION ....................................................................................... 1

   II.  PLAINTIFFS' STATEMENT OF FACTS.................................................... 1

5   III. ADMISSIONS AND STIPULATIONS NOT RECITED IN PRETRIAL ORDER ........3

6   IV.  PLAINTIFFS' SUMMARY OF POINTS OF LAW ..................................... 4

7        A.   Key Points of Law in this Case ...................................................... 4

8        B.   Defendants Violated Ms. Canter's Fourth Amendment Rights By
              Intentionally or Recklessly Provoking a Violent Confrontation..................... 5

9             1.   Factors Considered Under the Fourth Amendment Objective
                   Reasonableness Standard. .................................................. 5

10            2.   The Reasonableness Inquiry Includes Information the Officers
                   Knew Or Should Have Known ............................................ 5

11
              3.   An Officer Can Violate the Fourth Amendment By His Intentional
12                 or Reckless Provocation............................................................ 7

13            4.   The Instant Case Is A Prime Example of Intentional or Reckless
                   Provocation......................................................................... 8

14            5.   Officers Cox and Louchren Used Excessive Force Under the
                   Totality of the Circumstances. ........................................... 9

15       C.   Defendants Violated Plaintiffs' Fourteenth Amendment Rights. ....................... 10

16       D.   Qualified Immunity Is Waived and Does Not Apply .......................... 11

         E.   The City of Fresno Is Municipally Liable........................................... 11

17            1.   Fresno is Municipally Liable Due To Its Practice and Custom of
18                 Allowing Its Officers To Use Unreasonable Force In Connection
                   With Officer Involved Shootings Without Any Discipline or Extra
19                 Training ........................................................................... 11

20            2.   Fresno is Municipally Liable for Ratifying Its Officers'
                   Unconstitutional Use of Force ......................................... 12

21            3.   Fresno is Municipally Liable for Failing to Properly Train and
                   Supervise Its Officers........................................................ 12

22       F.   Defendants are Liable for Battery, Negligence and Wrongful Death................. 13

23            1.   Defendants Are Not Immune from State Law Claims Under
                   California Government Code § 820.2 ............................... 14

24       G.   Potential Disputes Concerning Admissibility of Evidence ...................... 15

25            1.   Admissibility of Policies, Procedures, and Training............................ 15

                   a.   FPD Policies, Procedures, and Training Are Central To The
26                      Questions of Objective Reasonableness, Recklessness, and
                        Intent Under Federal and State Law Claims .................... 15

27                 b.   FPD Policies and Procedures Inform Whether Defendants
                        Breached Their Duty Under State Law ............................ 17

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

CASES

4

*Abston v. City of Merced*,
 No. 1:09-cv-00511 OWW, OLB, 2011 WL 2118517 (E.D. Cal. May 24, 2011)................... 12

*Alexander v. City and County of San Francisco*,
 29 F.3d at 1361 (9th Cir. 1994)....................................................................................... 7, 8

*Billington v. Smith*,
 292 F.3d 1177 (9th Cir. 2002)........................................................................................ 7, 8

*Blankenhorn v. City of Orange*,
 485 F.3d 463 (9th Cir. 2007)............................................................................................ 12

*C.B. v. City of Sonora*,
 769 F.3d 1005, 1024-26 (9th Cir. 2014), *cert. denied sub nom.*
 *City of Sonora, Cal. v. C.B.*, 135 S. Ct. 1482 (2015) .......................................................... 6, 7

*Chien Van Bui v. City & Cty. of San Francisco*,
 61 F. Supp. 3d 877 ............................................................................................................ 9

*Davis v. City of Las Vegas*,
 478 F.3d 1048 (9th Cir. 2007)................................................................................ 5, 8, 9, 10

*Deorle v. Rutherford*,
 272 F.3d 1272 (9th Cir. 2001)......................................................................................... 5, 9

*Drummond ex rel. Drummond v. City of Anaheim*,
 343 F.3d 1052 (9th Cir. 2003)........................................................................................ 9, 14

*Espinosa v. City & County of San Francisco*,
 598 F.3d 528 (9th Cir 2010)............................................................................................... 8

*Gillette v. Delmore*,
 979 F.2d 1342 (9th Cir. 1992)............................................................................................ 12

*Glenn v. Washington Cnty.*,
 673 F.3d 864 (9th Cir. 2011)............................................................................................... 9

*Graham v. Connor*,
 490 U.S. 386 (1989) ..................................................................................................... 5, 8, 9

*Harlow v. Fitzgerald*,
 457 U.S. 800 (1992) ......................................................................................................... 11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
*Hayes v. County of San Diego*,
2        736 F.3d 1223 (9th Cir. 2013)........................................................................ 13

3
*Hunter v. County of Sacramento*,
         652 F.3d 1225 (9th Cir. 2011)........................................................................ 11
4
*In re Adbox, Inc.*,
5        488 F3d 836 (9th Cir. 2007) .......................................................................... 11

6
*Jayne v. Bosenko*,
7        No. 2:08-cv-02767-MJB, 2014 WL 2801198 (E.D. Cal. June 19, 2014) ................................ 6

*Jensen v. City of Oxnard*,
8        145 F.3d 1078 (9th Cir. 1998)......................................................................... 6
9
*Knapps v. City of Oakland*,
10        647 F. Supp. 2d 1129 (N.D. Cal. 2009) ............................................................. 15

11
*Lemire v. California Dep't of Corr. & Rehab.*
         726 F.3d 1062, 1078-79 (9th Cir. 2013) ........................................................... 17
12
*Liston v. County of Riverside*,
13        120 F.3d 965, 978–79 (9th Cir. 1997)................................................................ 6

14
*Ludwig v. Anderson*,
15        54 F.3d 465 (8th Cir. 1995).......................................................................... 15

16
*Lugtu v. California Highway Patrol*,
         26 Cal. 4th 703 (2001) ........................................................................ 13, 15
17
*Mendocino Environmental Center v. Mendocino County*,
18        192 F.3d 128316 (1999)............................................................................. 5 6

19
*Minch v. California Highway Patrol*,
20        140 Cal. App. 4th 895 (2006) ....................................................................... 15

21
*Monell v. Dep't of Soc. Servs.*,
         436 U.S. 658 (1978)............................................................................... 4, 11
22
*Motley v. Parks*,
23        383 F.3d 1058 (9th Cir. 2004)........................................................................ 7

24
*Porter v. Osborn*,
25        546 F.3d 1131 (9th Cir. 2008)................................................................... 10, 11

26
*Price v. Sery*,
         513 F.3d 962 (9th Cir. 2008)........................................................................ 11
27
*Romero v. Kitsap County*,
28        931 F.2d 624 (9th Cir.1991)......................................................................... 11

*Tennessee v. Garner*,
    471 U.S. 1, 18-19, 105 S. Ct. 1694 (1984)........................................................................ 14, 15

*Torres v. City of Madera*,
    648 F.3d 1119 (9th Cir. 2011)............................................................................ 5, 6, 14, 15

*Williams v. State of California*,
    34 Cal. 3d 18 (1983) ........................................................................................................ 13

STATUTES

42 U.S.C. § 1983 ............................................................................................................ 1, 5, 11, 12

Welfare & Institutions Code
    § 5150............................................................................................................................... 2
    § 5150(a) .......................................................................................................................... 2

OTHER AUTHORITIES

Fed. R. Civ. Proc. 8(c) ........................................................................................................... 11

Fourth Amendment ............................................................................................... *passim*

Fourteenth Amendment.......................................................................................... 1, 4, 10

I.      **INTRODUCTION**

On March 7, 2014, Fresno Police officer Edward Louchren kicked in the door to an apartment occupied by Veronica Canter.  Ms. Canter was inside the apartment alone and her only offense was trespassing.  There was no urgency.  Yet within minutes of arriving, Officer Louchren and another Fresno Police officer, Douglas Cox, forcefully entered the apartment with weapons at hand.  Ms. Canter, who was mentally ill, retrieved two knives from the kitchen. Officer Cox fired his Taser at Ms. Canter.  Officer Louchren shot Ms. Canter five times.  The latter three shots were fatal.

Plaintiffs are Ms. Canter's parents, Doris and Jerry Knox, and Ms. Canter's 26-year-old son, Jeremy Moore.  Each of Plaintiffs' claims for relief remain to be decided at trial:

- **First Cause of Action:** Violation of Ms. Canter's Fourth Amendment rights, 42 U.S.C. § 1983 – Against All Defendants
- **Second Cause of Action:** Violation of Plaintiffs' Fourteenth Amendment rights, 42 U.S.C. § 1983 – Against All Defendants
- **Third Cause of Action:** Wrongful Death – Against All Defendants
- **Fourth Cause of Action:** Negligence – Against All Defendants
- **Fifth Cause of Action:** Battery – Against All Defendants

All five causes of action are alleged by Ms. Canter's parents on their own behalf.  Pursuant to the Court's order on Defendants' motion to dismiss (Dkt. No. 48), Ms. Canter's son brings claims one and two as an individual and as successor-in-interest to Ms. Canter, and claims three through five as successor-in-interest only.  The trial will be bifurcated into three phases.  Phase 1 will address the Defendant Officers' liability and Fresno's direct liability for negligence; Phase 2 will address Fresno's liability under Section 1983; and Phase 3 will address damages.

II.     **PLAINTIFFS' STATEMENT OF FACTS**

On March 7, 2014, FPD officer Douglas Edward Cox responded to two 911 calls regarding a disturbed woman, from an apartment complex located at 1348 East San Bruno Avenue in Fresno, California.  The first call was made by the property manager, Veronica Placentia, and the second was made by a resident, Dag Lindbeck, who Ms. Canter had been

staying with.  Dispatch sent two messages to the responding officers based on the 911 calls: One said that a female "was outside talking to herself, dancing around" and "told the male resident she would kill him."  The other said "**female has mental issues**."  In fact, just three weeks earlier, on February 15, 2014, an FPD officer had placed Ms. Canter under a Welfare & Institutions Code section 5150 hold for lying nearly naked in the middle of a busy street.[1]

Ms. Canter had locked Mr. Lindbeck out of his apartment after he asked her to leave because her odd behavior had drawn complaints from neighbors and the property manager, Ms. Placentia.  After arriving at the scene at 3:45 p.m., Officer Cox spoke briefly with Mr. Lindbeck, who told him that Ms. Canter was "acting crazy."  Ms. Canter was inside the apartment screaming incoherently.  She was wearing a basketball net as a skirt over her clothing.

FPD policy states that when an officer is "responding to or handling a call involving a suspected or actual mentally disabled individual," he or she "shall attempt to obtain mental health history, if available, and any previous law enforcement contacts . . . ."  (FPD Procedure 418 at A.) This policy also directs officers dealing with suspected mentally ill subjects to call the "Crisis Services Division of the Fresno County Department of Health" for guidance.

Despite multiple indications that Ms. Canter was suffering from a mental health disorder, Officer Cox did not avail himself of any of these resources.  Had he obtained Ms. Canter's prior law enforcement contacts from dispatch, he would have learned of her recent Section 5150 hold. Nor did he speak with any of the residents standing nearby, many of whom had observed Ms. Canter's abnormal behavior (including Ms. Placentia who made one of the two 911 calls).

Officer Cox was able to open the door slightly, but Ms. Canter pushed her weight against the door and locked it.  Officer Cox then called for backup, Code 3, which means "respond with lights and siren."  Officer Edward Louchren arrived at the scene at 3:50 p.m.  Officer Louchren

---

[1] Welfare & Institutions Code section 5150(a) states that "When a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer . . . may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention."

1    also did not question any of the witnesses at the scene regarding Ms. Canter's abnormal behavior,

2    call dispatch to inquire into Ms. Canter's prior law enforcement contacts, or utilize any FPD

3    resources for dealing with mentally or emotionally disturbed people.  Officer Louchren told Mr.

4    Lindbeck that unless Mr. Lindbeck wanted to press charges against Ms. Canter for trespassing,

5    the officers would be leaving.  Wanting to get back into his apartment, according to the officers,

6    Mr. Lindbeck agreed.  Instead of waiting for Ms. Canter to calm down, Officer Louchren decided

7    to immediately force entry into the apartment and remove Ms. Canter.  Officer Louchren asked

8    Ms. Placentia whether to break the window or kick down the door; she said the latter would be

9    easier to repair.

10   Shortly before 3:55 p.m.—less than five minutes after his arrival on the scene—Officer

11   Louchren kicked in the locked door and both officers entered the apartment.  Officer Cox had his

12   Taser drawn, and Officer Louchren had his gun drawn or drew it shortly after entering.

13   Ms. Canter allegedly walked to the kitchen and came back holding two knives.  Officer Cox

14   discharged his Taser into Ms. Canter's chest, but it had limited effect because he fired from too

15   close of a distance.  Moments later, Officer Louchren fired five shots into Ms. Canter.  The first

16   two shots struck both her legs and left arm, and were non-fatal.  The last three shots entered her

17   chest cavity and were fatal.  Ms. Canter was pronounced dead at the scene.

18   **III.    ADMISSIONS AND STIPULATIONS NOT RECITED IN PRETRIAL ORDER**

19   The parties have stipulated to the following additional facts:

20   •  The first two gunshot wounds suffered by Ms. Canter were not fatal (Dkt. No. 89,
        Stipulation filed June 1, 2016); and

21

22   •  The City of Fresno is vicariously liable for the tortious conduct, if any, of its
        officers (stipulated in court on May 27, 2016).

23   In addition, Defendants have agreed that they will not make reference to Exhibit "K" to

24   the expert report of their expert Craig Fries.  (Stipulated in Defs.' Opposition to Plaintiffs'

25   Motions in Limine (Dkt. No. 73) at p. 5, and confirmed in court on May 27, 2016.)  Defendants

26   have indicated that they reserve the right to use Exhibit "K" in their closing argument.  (*See id.*)

27   The parties will meet and confer on the issue of whether the document can be used at closing

28   argument, and will seek the Court's assistance if needed.  To the extent Exhibit "K" includes

excerpts of officer interviews that were not admitted into evidence, it should not be permitted at closing argument.

In Phase II of trial, Plaintiffs will admit Defendants' responses to requests for admission nos. 7-8, 14-15, 20-21 and Defendants' responses to Interrogatory nos. 14 and 16-17.  These responses address the number of shootings in Fresno in the ten years preceding the shooting of Veronica Canter, whether any shootings were found to be in violation of department policy, and whether any discipline was imposed following any shootings.  We are not quoting these responses here because they were given subject to the existing protective order.

## IV.    PLAINTIFFS' SUMMARY OF POINTS OF LAW

### A.    Key Points of Law in this Case

The fatal shooting of Veronica Canter should never have occurred.  It was occasioned by Officers' Cox and Louchren's inexplicable forceful entry into the apartment with weapons at hand.  In so doing, they provoked a violent confrontation, which they then resorted to lethal force to resolve.  The Defendant Officers did not take any of the actions and precautions required for dealing with mentally or emotionally disturbed individuals because they ignored numerous indications that Ms. Canter was mentally ill, including a dispatch message that said "female has mental issues," multiple neighbors standing around the apartment courtyard who had observed Ms. Canter's abnormal behavior, and the FPD's own records of Ms. Canter's recent 5150 hold.

The City of Fresno is liable for Ms. Canter's death for:  (1) causing the violation of Ms. Canter's and Plaintiffs' Fourth and Fourteenth Amendment rights due to its failure to train and supervise its officers regarding the use of force and dealing with mentally or emotionally disturbed individuals; (2) ratifying the unconstitutional conduct of Officers' Cox and Louchren; (3) allowing a pattern and practice of now disciplining officers for the use of deadly force; (4) negligently failing to properly train and supervise its officers regarding dealing with mentally or emotionally disturbed individuals, and (5) *respondeat superior*.

**B.      Defendants Violated Ms. Canter's Fourth Amendment Rights By Intentionally or Recklessly Provoking a Violent Confrontation.**

Plaintiffs briefly reiterate tenets of a Section 1983 claim brought under the Fourth Amendment, which are set forth more fully in the pre-trial order (Dkt. No. 64), and address several legal issues pertinent to the Fourth Amendment violations at issue in this case.

**1.      Factors Considered Under the Fourth Amendment Objective Reasonableness Standard.**

The Fourth Amendment guarantees a right against unreasonable searches and seizures. The reasonableness inquiry focuses on "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Factors considered include "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Also considered is the "quantum of force" used, *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007), the availability of less severe alternatives, *id.* at 1054, and whether it was or should have been apparent that the suspect had mental health problems, *see Deorle v. Rutherford*, 272 F.3d 1272, 1282 (9th Cir. 2001).

**2.      The Reasonableness Inquiry Includes Information the Officers Knew Or Should Have Known**

In determining the reasonableness of an officer's actions under the Fourth Amendment, the trier of fact must "adopt 'the perspective of a reasonable officer on the scene ... in light of the facts and circumstances confronting [him].'" *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011) (quoting *Graham*, 490 U.S. at 396). The facts and circumstances *confronting* the officer are not limited to the facts and circumstances *actually known* by that officer. The Ninth Circuit has made clear that an officer is charged with all information that the officer knew or reasonably *should have known* under the circumstances. In *Torres v. City of Madera*, the Ninth Circuit held that if the officer "knew or should have known that the weapon she held was a Glock rather than a Taser, and thus had been aware that she was about to discharge deadly force . . . then

her application of that force was unreasonable." 648 F.3d at 1124-25. Likewise, in *Jensen v. City of Oxnard*, the Ninth Circuit held that an officer's accidental shooting of his fellow officer was unreasonable if, under the circumstances, the officer should have been able to recognize the person standing before him. 145 F.3d 1078, 1086 (9th Cir. 1998). And in *Liston v. County of Riverside*, the Ninth Circuit held that a reasonable jury could conclude that a reasonable officer "would have known" that he had the wrong person in custody long before the detention at issue ended. 120 F.3d 965, 978–79 (9th Cir. 1997).

In the Eastern District of California, Circuit Judge Berzon, sitting by designation, summarized numerous authorities as follows: "Where the existence of a Fourth Amendment violation turns on an official's factual knowledge, the Ninth Circuit has interpreted the reasonableness inquiry to require an assessment of whether that official had or *should have had* the requisite knowledge." *Jayne v. Bosenko*, No. 2:08-cv-02767-MJB, 2014 WL 2801198, at *16 (E.D. Cal. June 19, 2014) (emph. added). In that case, the plaintiff claimed that officers unconstitutionally recorded a voicemail he left for his lawyer. *Id.* at *1. Judge Berzon ruled that although the officers testified that they did not "know" the voicemail was left for an attorney, the evidence supported a reasonable inference that the officers "knew or should have known that the recording of Jayne's voicemail to 'Cindy' was, in fact, a message to his attorney" based on numerous indications. *Id.* at *18.

Relatedly, the Ninth Circuit has repeatedly held that before proceeding with an arrest, an officer must conduct a reasonable investigation, which includes speaking with witnesses at the scene, asking questions based on information contained in the dispatch, and verifying information about the suspect before using force. For instance, in *C.B. v. City of Sonora*, the Ninth Circuit held that officers responding to a dispatch they had received about an "out of control minor" acted unreasonably when they arrived at the school and found "a quiet but nonresponsive child" because they "did not ask a single follow-up question to learn what Coach Sinclair meant and never inquired what had prompted the dispatch." 769 F.3d 1005, 1024-26 (9th Cir. 2014), *cert. denied sub nom. City of Sonora, Cal. v. C.B.*, 135 S. Ct. 1482 (2015). Since the child was calm and surrounded by adults, the court concluded: "Nothing about the situation demanded an

immediate response. Under these circumstances, the officers could have, and should have, asked some simple follow-up questions that would have enabled them to determine an appropriate response." *Id.* Likewise, in *Mendocino Environmental Center v. Mendocino County*, the Ninth Circuit held: "Although a police officer is entitled to rely on information obtained from fellow law enforcement officers . . . this in no way negates a police officer's duty to reasonably inquire or investigate these reported facts." 192 F.3d 1283, 1293 n.16 (1999) (citation omitted).

Officers must also conduct a reasonable investigation before entering a residence without a warrant and with no exigency. *See, e.g.*, *Motley v. Parks*, 383 F.3d 1058, 1068-69 (9th Cir. 2004) ("The searching officers' responsibilities include a duty to conduct a reasonable investigation[.]"). In *Motley*, when officers arrived at the last known address of a parolee and were informed by the resident that he no longer lived there and was in custody, the Ninth Circuit held that the officers did not act reasonably in searching the home because "all the officers would have had to do is make one phone call to determine whether Jamerson was in custody. They did not." *Id.* at 1069.

A rational jury can easily find that Officers Cox and Louchren knew that Veronica Canter was mentally ill. Their dispatch message said that Ms. Canter "has mental issues"; Mr. Lindbeck told officer Cox that Ms. Canter was "acting crazy"; and Ms. Canter's behavior and dress in the minutes leading up to the shooting were abnormal. The jury can also find that Defendants should have known that Ms. Canter was mentally ill. Had the officers requested Ms. Canter's prior law enforcement contacts, as they were required to do under FPD's own policies, they would have learned of her recent 5150 detention. And had the officers questioned Mr. Lindbeck, Ms. Placentia, or any of the other bystanders—something their policies and training call for— they would have quickly learned of Ms. Canter's mental illness.

### 3. An Officer Can Violate the Fourth Amendment By His Intentional or Reckless Provocation.

An officer who recklessly or intentionally provokes a violent confrontation may be held liable for his otherwise reasonable use of defensive force if the *provocation* was objectively unreasonable. *Billington v. Smith*, 292 F.3d 1177, 1189-90 (9th Cir. 2002). In *Alexander v. City*

*and County of San Francisco*, the Ninth Circuit held that the police could be liable for shooting a mentally ill man who raised a gun to them and pulled the trigger if they "used excessive force in creating the situation which caused [the man] to take the actions he did." 29 F.3d 1355, 1361, 1366 (9th Cir. 1994). In that case, officers were assisting the Health Department in executing an inspection warrant "to enable the inspectors to determine whether the property complied with various health and building codes." *Id.* at 1360. When they approached his window, he yelled "I'm going to get my gun and use it." *Id.* at 1358. The police called in a SWAT team and crisis negotiators. *Id.* After nearly an hour of attempts to speak to the man, orders were given to enter the home. *Id.* Officers broke down the door with a battering ram, and when they entered, the decedent was holding a gun and said "I told you I was going to use it," and pulled the trigger (the gun misfired). *Id.* Officers immediately shot back and killed him. *Id.* The Ninth Circuit held: "Plaintiff's claim, if supported by the evidence, states a classic Fourth Amendment violation under *Graham v. Connor* . . . ." That is, if law enforcement's goal was to assist in the execution of an *inspection* warrant, the use of a SWAT team and a battering ram was excessive and unreasonable force. *Id.* at 1367.

Likewise, in *Espinosa v. City & County of San Francisco*, when officers entered an apartment based on a tip that it may be a drug house, the Ninth Circuit held there were questions of fact regarding the reasonableness of the use of force where officers cornered a man in an attic and shot him when he "refused to show his hands and made disturbing statements, such as 'Kill me or I'll kill you.'" 598 F.3d 528, 537-38 (9th Cir. 2010). The court held that "the district court did not err in finding that there are genuine issues of fact regarding whether the officers intentionally or recklessly provoked a confrontation with [the decedent]" because they entered the apartment without a warrant and without an emergency or exigency. *Id.* at 534-36, 539.

### 4. The Instant Case Is A Prime Example of Intentional or Reckless Provocation

Both officers disregarded clear indications that Ms. Canter suffered from mental illness and failed to follow FPD policies and procedures governing handling of mentally and emotionally disturbed subjects. Officers Cox and Louchren also failed to consider the availability of less

severe alternatives.  *See Davis,* 478 F.3d at 1054.  The officers did the *opposite* of de-escalation.
They did not attempt to calm Ms. Canter down, and they did not call their supervisor or one of the
Fresno County mental health clinicians (MH1 and MH2) to ask for assistance.  In fact, they did
not even wait five minutes before confronting Ms. Canter with weapons.  Their violent intrusion
into the apartment with weapons drawn caused a disturbed, mentally ill woman to grab knives
from the kitchen, which quickly led to the fatal shooting within minutes of their arrival.

> **5.** **Officers Cox and Louchren Used Excessive Force Under the Totality of the Circumstances.**

Under the totality of the circumstances, the force used by Officers Cox and Louchren was
objectively unreasonable under the *Graham* factors.  Ms. Canter's only alleged crime was
trespassing.  "Trespassing and obstructing a police officer . . . are by no means such serious
offenses as to provide an officer with a reasonable basis for subduing a person by [using
violence]."  *See Davis,* 478 F.3d at 1055.  The use of force was also unreasonable considering the
lack of "an immediate threat to the safety of the officers or others."  *Graham*, 490 U.S. at 396,
109 S.Ct. 1865.  Ms. Canter was locked *alone* inside an apartment.  Officers Cox and Louchren
used excessive force by breaking down the door to the apartment where Ms. Canter was located,
despite there being no urgency or need.

It also was or should have been apparent to the officers that Ms. Canter was mentally ill or
at least emotionally disturbed, a factor that *must* be considered in evaluating their conduct under
an objective reasonableness standard.[2]  *See Deorle*, 272 F.3d at 1282; see also *Drummond ex rel.
Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003) ("[W]e have held that a
detainee's mental illness must be reflected in any assessment of the government's interest in the
use of force."); *Glenn v. Washington Cnty.*, 673 F.3d 864, 875 (9th Cir. 2011) (reversing
summary judgment in part because the decedent was obviously emotionally disturbed, a fact to
which the officers "should have assigned greater weight"); *Chien Van Bui v. City & Cty. of*

---

[2] This factor is also included in Ninth Circuit Model Jury Instruction No. 9.23.

*San Francisco*, 61 F. Supp. 3d 877, 895 (N.D. Cal. 2014) (denying summary judgment on excessive force in part because of factual issue whether the officers knew or should have known the suspect had mental health problems).

Finally, the firing of five shots was excessive under the circumstances. *See Davis,* 478 F.3d at 1055 (holding that the quantum of force must be reasonable under the circumstances). The first two shots, which went through Ms. Canter's legs and left arm, would have been sufficient to subdue her. The last three shots were unnecessary and turned an already violent confrontation into a fatal one.

**C.    Defendants Violated Plaintiffs' Fourteenth Amendment Rights.**

Plaintiffs have a Fourteenth Amendment due process right to the familial association with their mother and daughter, Veronica Canter. *See Porter v. Osborn*, 546 F.3d 1131, 1136 (9th. Cir. 2008). The standard of culpability for such a claim is whether an officer's actions "shock the conscience," which can be met either by showing that the officer acted with deliberate indifference or a purpose to harm. *Id.* at 1137. The less demanding "deliberate indifference" standard is available where "the circumstances are such that actual deliberation is practical." *Id.* (internal quotation marks and citation omitted).

Here, there is no question that Officers Cox and Louchren had time for deliberation, even though they did not avail themselves of it. Both officers testified that there was no urgency. Therefore, the deliberate indifference standard applies.

"When an officer **creates the very emergency he then resorts to deadly force to resolve**, he is not simply responding to a preexisting situation. His motives must then be assessed in light of the law enforcement objectives that can reasonably be found to have justified his actions." *Porter*, 546 F.3d at 1141. This describes the actions of Officers Cox and Louchren to a tee. The officers acted with deliberate indifference in their initial decision to kick down the door and enter the apartment with weapons at hand. They knew that they were not dealing with a normal 48-year-old woman, or they recklessly ignored clear indications that Ms. Canter was suffering from a mental health disorder. At the very least, it was plain to see that Ms. Canter was emotionally disturbed at the time the officers decided to force entry. Even under the more

exacting "purpose to harm" standard, the Ninth Circuit in *Porter v. Osborn* held that the officer's "severe and sudden escalation of the situation" by firing five shots when the suspect's "only violation was non-compliance" might show he acted with a purpose to harm for reasons unrelated to legitimate law enforcement objectives. *Id.* at 1142.

### D.   Qualified Immunity Is Waived and Does Not Apply

Defendants did not plead the affirmative defense of qualified immunity—in fact, they failed to file *any* answer to the First Amended Complaint.  (*See generally* Court Docket.)  All affirmative defenses, including qualified immunity, are therefore waived. Fed. R. Civ. Proc. 8(c) (stating that "a party must affirmatively state any avoidance or affirmative defense"); *In re Adbox, Inc.*, 488 F3d 836, 841-842 (9th Cir. 2007) ("Federal Rule of Civil Procedure 8(a) and (c) provide that a defendant's failure to raise an 'affirmative defense' in his answer effects a waiver of that defense"); *see also Federal Civil Procedure Before Trial* (2015), The Rutter Group, 8:965, 8:968 ("If an affirmative defense is neither pled nor tried with the parties' consent, it is deemed waived").  Even if qualified immunity had been pleaded, it does not apply here.  Officers are immune only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992).  Defendants have not argued, nor could they, that the constitutional rights at issue were not so "clearly established" as to alert a reasonable officer to its constitutional parameters.  *See Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

### E.   The City of Fresno Is Municipally Liable

#### 1.   Fresno is Municipally Liable Due To Its Practice and Custom of Allowing Its Officers To Use Unreasonable Force In Connection With Officer Involved Shootings Without Any Discipline or Extra Training

Under *Monell*, liability can be imposed on a municipality under Section 1983 if an employee is acting pursuant to a longstanding practice or custom.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008)); *see also Hunter v. County of Sacramento*, 652 F.3d 1225, 1236 (9th Cir. 2011) (holding it was error to fail to instruct jury that municipal liability can be shown through "evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went

1   unpunished").  The City of Fresno is liable under *Monell* because it has a high number police

2   shootings and a longstanding pattern and practice of failing to properly discipline and train its

3   offers who are involved in such shootings.

### 2.    Fresno is Municipally Liable for Ratifying Its Officers' Unconstitutional Use of Force

6   A municipality is liable for the constitutional violations of its officers when "an official

7   with final policy-making authority ratified a subordinate's unconstitutional decision or action and

8   the basis for it."  *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).  Fresno is thus

9   liable in this case because it ratified the Defendant officers' excessive use of force.

### 3.    Fresno is Municipally Liable for Failing to Properly Train and Supervise Its Officers

12   "Failure to train may serve as a basis for Section 1983 liability where the failure to train

13   amounts to 'deliberate indifference to the rights of persons with whom the police come into

14   contact.'"  *Abston v. City of Merced*, No. 1:09-cv-00511 OWW-OLB, 2011 WL 2118517, at *14

15   (E.D. Cal. May 24, 2011) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).  To

16   establish municipal liability for a failure to train, a plaintiff must show that "(1) he was deprived

17   of a constitutional right, (2) the City had a training policy that amounts to deliberate indifference

18   to the [constitutional] rights of the persons with whom [its police officers] are likely to come into

19   contact and (3) his constitutional injury would have been avoided had the City properly trained

20   those officers."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (internal

21   quotations omitted).

22   Plaintiffs will show municipal liability through the City's failure to follow its own policy

23   that stated that all FPD officers shall receive training at least every 3 years relating to persons

24   suffering from mental illness.  Defendant Officers Cox and Louchren had only 2 hours of training

25   at a Mental Awareness Update in 2009.  A rational jury can find that the failure to train officers

26   regarding mentally ill subjects and other policies such as "forced entry" resulted in the Defendant

27   officers' use of unnecessary and excessive force in the shooting of Ms. Canter.

28

1

**F.      Defendants are Liable for Battery, Negligence and Wrongful Death**

2      Plaintiffs' state law causes of action for wrongful death, negligence, and battery arise

3 under California common law under the same facts that give rise to the federal constitutional

4 claims.  As noted in the pre-trial order, negligence, wrongful death and battery claims in an

5 excessive force case have the same standard of culpability as is applied under the Fourth

6 Amendment.  (*See* Dkt. No. 64 at 12.)

7      As in the Fourth Amendment context:

8      [T]he long-established principle of California negligence law [is] that the
       reasonableness of a peace officer's conduct must be determined in light of the
9      totality of circumstances. [citation] There is "no sound reason to divide plaintiff's
       cause of action ... into a series of decisional moments ... and then to permit
10     plaintiff to litigate each decision in isolation, when each is part of a continuum of
       circumstances surrounding a single use of deadly force." [citation] Instead, under
11     *Grudt*, an officer's preshooting conduct is properly "included in the totality of
       circumstances surrounding [his] use of deadly force, and *therefore the officer's*
12     *duty to act reasonably when using deadly force extends to preshooting conduct*."

13 *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013) (emph. in original) (quoting

14 *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622 (2013).

15     Defendants Cox and Louchren's duty of care toward Ms. Canter arose from two separate

16 bases: (i) the duty of all persons to exercise due care in their actions so as not to create an

17 unreasonable risk of injury to others and (ii) their affirmative acts that created a risk of harm to

18 Ms. Canter.  *Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 716 (2001) ("[A] person

19 ordinarily is obligated to exercise due care in his or her own actions so as to not to create an

20 unreasonable risk of injury to others"); *Williams v. State of California*, 34 Cal. 3d 18, 24 (1983)

21 (holding that law enforcement officers may be liable for affirmative acts that create a peril or

22 increase the risk of harm).

23     For the reasons discussed above, the Defendant officers' conduct was objectively

24 unreasonable, and they are therefore liable for negligence, battery, and the wrongful death of

25 Ms. Canter.  Defendant City of Fresno is directly liable for its negligent failure to train its

26 officers, and it is also vicariously liable for the tortious conduct of its officers under the doctrine

27 of *respondeat superior*.

28

1

**1.    Defendants Are Not Immune from State Law Claims Under California Government Code § 820.2**

Defendants argue that the Court should instruct the jury with respect to the immunity provided under California Government Code § 820.2.  (Defendants' Supplemental Brief Re: Limitation on Use of Defendant Policies (Dkt. 96) at 4:2-4.)  Section 820.2 provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Section 820.2 only provides immunity from state law claims in a narrow set of circumstances not present here.  The Ninth Circuit has summarized the two controlling principles of Section 820.2 immunity as follows:

> Two principles California courts consider to determine whether discretionary act immunity applies are particularly relevant here. *See Barner v. Leeds*, 24 Cal.4th 676, 684–85, 102 Cal.Rptr.2d 97, 13 P.3d 704 (2000). First, "not all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of section 820.2." *Id.* (citation omitted). In other words, the California legislature did not intend to define discretion colloquially. *See id.* Instead, courts must distinguish between public employees' policy decisions and their operational, or ministerial, decisions. *See id.* at 685, 102 Cal.Rptr.2d 97, 13 P.3d 704. Quasi-legislative policy decisions are protected from judicial scrutiny pursuant to a separation of powers rationale. *See id.* "On the other hand, there is no basis for immunizing lower level decisions that merely implement a basic policy already formulated." *Id.* (citation omitted).
>
> Second, government defendants have the burden of establishing that they are entitled to immunity for an actual policy decision made by an employee who "consciously balanc[ed] risks and advantages ..." *Johnson* [*v. State*, 69 Cal.2d 782 (1968)] at 795 n. 8, 73 Cal.Rptr. 240, 447 P.2d 352. "The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." *Id.* (citation omitted).

*AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 639 (9th Cir. 2012).

Here, Officers Cox and Louchren were not making discretionary planning or basic policy decisions in confronting and killing Veronica Canter within a few minutes of their arrival.  They were making operational decisions and their operational blunders are thus not immune under Section 820.2.  The fact that Procedure 418 says that officers "should" carefully consider various options in dealing with mentally ill people does not render their actions protected "quasi-legislative policy decisions."  The officers also fail the second prong under *Barner v. Leeds*,

because they did not "consciously balance [the] risks and advantages" of taking or not taking any of the actions recommended by Procedure 418.  They simply ignored Procedure 418 altogether.

### G.    Potential Disputes Concerning Admissibility of Evidence

#### 1.    Admissibility of Policies, Procedures, and Training

##### a.    FPD Policies, Procedures, and Training Are Central To The Questions of Objective Reasonableness, Recklessness, and Intent Under Federal and State Law Claims

This Court asked the parties to consider whether it might be necessary to give a limiting instruction regarding the Fresno Police Department's policies.  Those policies are relevant to all of Plaintiffs' claims.  Thus, it is Plaintiffs' position that no limiting instruction is necessary.

A police department's policies are one of the factors to consider in evaluating the objective reasonableness of an officer's use of force.  The Supreme Court in *Tennessee v. Garner* established that the rules of individual states as well as actual department policies are relevant and "important" to the Fourth Amendment analysis of reasonableness.  417 U.S. 1, 7, 105 S. Ct. 1694, 1703 (1984).  The Ninth Circuit states that "[a]lthough such training materials are not dispositive, we may certainly consider a police department's own guidelines when evaluating whether a particular use of force is constitutionally unreasonable."  *Drummond*, 343 F.3d at 1059 (considering the police department's guidelines in reversing summary judgment for the defendants).  "'[I]t may be difficult to conclude that the officers acted reasonably if they performed an action that had been banned by their department or of whose dangers in these circumstances they had been warned.'"  *Id* . (*quoting Gutierrez v. City of San Antonio*, 139 F.3d 441, 449 (5th Cir.1998)).

In *Torres*, discussed above, the Ninth Circuit discussed the factors that guided the determination of whether the officer "should have known she was holding the wrong weapon" under the Fourth Amendment reasonableness standard—those factors included "(1) the nature of the training the officer had received to prevent incidents like this from happening; (2) whether the officer acted in accordance with that training; [and] (3) whether following that training would have alerted the officer that [s]he was holding a handgun."  *Torres*, 648 F.3d at 1125.  In

1    overturning summary judgment for the defendants, the court reasoned that a reasonable jury could

2    conclude that the officer did not act in accordance with her training and "that had she done so,

3    [the victim's] death could have been avoided."  *Id.* at 1126; *see also Knapps v. City of Oakland*,

4    647 F. Supp. 2d 1129, 1157-58 (N.D. Cal. 2009) (in finding the officer used excessive force,

5    considering (i) that the officer's escalation of a situation with an unprofessional statement was

6    "not what a reasonably trained officer would do, and not in accord with peace officer standards

7    and training" and (ii) that the application of a carotid hold was "excessive and unreasonable"

8    considering it was contrary to the police department's policy).

9        In this case, Defendants Cox and Louchren's failure to follow the FPD policies and

10   procedures relating to mentally ill subjects and barricaded subjects, as well as the department's

11   training regarding mentally ill subject and its considerations governing forced entry, is relevant to

12   their failure to act reasonably.  *See Ludwig v. Anderson*, 54 F.3d 465, 472 (8th Cir. 1995) (citing

13   *Tennessee* , 471, U.S. at 18-19, 105 S. Ct. 1694, at 1704-1705) (finding police manual regarding

14   dealing with emotionally disturbed persons relevant to analysis of constitutionally excessive force

15   where defendants shot and killed emotionally disturbed person).

16       Defendants contend that under *Whren v. United States*, 517 U.S. 806 (1996), "department

17   policies are simply not relevant to whether individual officers committed a constitutional

18   violation."  (Docket No. 96 at 2:8.)  *Whren* makes no such holding and is not applicable here.  In

19   *Whren*, the Supreme Court held that a stop of a vehicle was reasonable if the officers had

20   probable cause.  The criminal defendant in that case had argued that the Fourth Amendment test

21   for traffic stops should be whether a reasonable police officer would have stopped the vehicle—

22   irrespective of whether there was probable cause.  That case did not hold—or even suggest—that

23   policies of a police department are not relevant in a Section 1983 case.[3]

24

25

26   _____

27       [3] Moreover, the quote that Defendants chose to put in their brief (*see* Docket No. 96 at
     2:12) does not appear anywhere in the Supreme Court's opinion.

28

1    As discussed above, the reasonableness inquiry for the state law claims of wrongful death

2    and battery coincides with the reasonableness standard under federal law.  The Defendant

3    officers' failure to follow Fresno's policies, procedures, and training is thus an important factor in

4    determining the reasonableness of their conduct under both federal and state law analysis.

5         Compliance with official policies and procedures is also relevant to whether an officer has

6    acted with "deliberate indifference" under the Fourteenth Amendment.  *See, e.g.*, *Akey v. Placer*

7    *Cty., Cal.*, No. 2:14-CV-02402-KJM, 2015 WL 1291436, at *3 (E.D. Cal. Mar. 20, 2015) (ruling

8    that alleged "fail[ure] to follow [county Family and Children Services agency's] policies and

9    procedures" could state a claim for violation of the Fourteenth Amendment); *see also Lemire v.*

10   *California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1078-79 (9th Cir. 2013) (holding that failure

11   to follow polices regarding inmate security could show deliberate indifference under the Eighth

12   Amendment).  Defendants have cited no case saying that compliance with policies or procedures

13   is not relevant to whether an officer's actions were taken with deliberate indifference.  To the

14   contrary, departure from department policies and procedures is relevant because it demonstrates

15   that the Defendant officers consciously or recklessly failed to perform actions that they were

16   trained and expected to perform.

17         **b.    FPD Policies and Procedures Inform Whether Defendants**
               **Breached Their Duty Under State Law**

18

19         Police department policies are also critical to an analysis of breach of duty under

20   negligence claims.  While those policies do not create a duty, they are relevant to breach of

21   duty.  In considering the relevance of the CHP Officer Safety Manual to a negligence claim, the

22   California Supreme Court held that "it is clear that the manual may be considered as evidence on

23   the question of negligence."  *Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 720-21 (2001)

24   (manual "may be *considered* by the trier of fact in determining whether or not an officer was

25   negligent in a particular case") (emphasis in original); s*ee also Minch v. California Highway*

26   *Patrol*, 140 Cal. App. 4th 895, 908 (2006) ("The provisions of the manual would be admissible

27   evidence on the question of breach of duty but do not substitute for judicial determination

28   whether a duty was owed.").  In this case, as discussed above, Defendants Cox and Louchren's

1    duty was established both by the duty of ordinary care and by their affirmative acts that created a

2    risk of harm to Ms. Canter.  Their breach of that duty is supported in part by their failure to

3    follow the policies and procedures of their department.

4                                                    * * *

5                                          Respectfully submitted,

6

7    Dated: June 3, 2016                             ARTURO J. GONZÁLEZ
                                                     WESLEY E. OVERSON
8                                                    ROBERT J. ESPOSITO
                                                     SABRINA LARSON
9                                                    MORRISON & FOERSTER LLP

10

11                                           By:   /s/ Arturo J. González
                                                     ARTURO J. GONZÁLEZ

12                                                 Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28