Bruce D. Praet, SBN 119430
FERGUSON, PRAET & SHERMAN
A Professional Corporation
1631 East 18th Street
Santa Ana, California 92705
(714) 953-5300 Telephone
(714) 953-1143 Facsimile
BPraet@aol.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY WAYNE KNOX, et al., <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF FRESNO, a municipal corporation, JERRY DYER, individually and in his capacity as Chief of Police for the CITY OF FRESNO, <br><br> Defendants. | No. 1:14-CV-0799 EPG <br><br> **DEFENDANTS' TRIAL BRIEF** <br><br> **TRIAL: June 14, 2016** <br> **TIME: 8:30 a.m.** <br> **COURTROOM: 10** |

**1.     PREFATORY STATEMENT.**

Because Defendants' lone counsel has unfortunately been inundated with volumes of burdensome paperwork from Plaintiffs' "army of attorneys", Defendants respectfully request that the Court consider this (optional) Trial Brief submitted one day late.  On the other hand, because the Court is already intimately familiar with the facts and most of the issues in this case, Defendants have separately addressed many of the issues set forth in Plaintiffs' Trial Brief in timely filed Supplemental Briefs and will therefore limit this Trial Brief to only a few remaining issues.

///

///

## 2. FACTUAL SUMMARY.

During the first phase of this trifurcated trial, it will all come down to the facts confronting Officers Cox and Louchren as they responded to the call from Dag Lindbeck seeking to have his ex-girlfriend, Veronica Canter, removed from his apartment after she locked him out. While Plaintiffs seek to turn this call into anything from a mental health situation[1] to a "barricaded subject", the truth is that the information presented to the officers at the scene dictated that this was little more than a relatively routine boyfriend-girlfriend disturbance with a rather angry ex-girlfriend.

Ironically, Officers Cox and Louchren were preparing to walk away from the situation until Mr. Lindbeck agreed to have Ms. Canter arrested for trespassing. However, because neither Mr. Lindbeck nor the apartment manager had a key to unlock the front door, the manager instructed officers to kick open the door rather than allowing Mr. Lindbeck to break a window. Expecting to simply send Veronica Canter on her way with nothing more than a misdemeanor citation, officers made entry through the front door to find her standing in the living room. Still having no reason to believe that this would suddenly change into a deadly attack by Veronica Canter, officers calmly asked for her cooperation.

Unfortunately, Veronica Canter instead retrieved two large knives from the kitchen and suddenly began aggressively advancing on Officer Louchren with both knives flailing in front of her. Not wanting to shoot her, Officer Louchren yelled at Officer Cox to "Tase her" as he frantically pled with Veronica to "drop the knives". Regrettably, the Taser only momentarily caused Ms. Canter to pause as she turned her aggression with both knives toward Officer Cox. Having no

---

[1] Even with the Court's potential allowance of Veronica Canter's "5150" from three weeks prior (not known to Officers Cox and Louchren), it would be purely speculative to suggest that knowledge of that prior incident would have changed the outcome of this case.

choice but to fire his service weapon, Officer Louchren fired until Veronica Canter collapsed on the couch in front of Officer Cox and finally dropped the knives.

### 3. LEGAL ISSUES.

Despite last minute efforts of Plaintiffs to expand their "negligence" claims to the City of Fresno with an untimely motion for leave to amend, this case is now appropriately postured to present the jury with only that evidence and those legal theories relevant to the issues of individual liability as to Officers Cox and Louchren. Thus, in Phase One, the jury will be asked to determine two separate legal questions under two somewhat conflicting standards.

#### A. Fourth Amendment "Excessive Force" Claim.

The parties have submitted slightly different versions of the Ninth Circuit Model Instruction No. 9.23, the "objective reasonableness" standard of *Graham v Connor, 490 U.S. 386 (1989)*. While Plaintiffs identify three specific factors to consider under the *Graham* test, the Supreme Court and 9.23 make it clear that it is instead the "totality of the circumstances confronting the officers at the time" which must be considered.

Notwithstanding the Court's clear ruling with respect to Defendants' *limine* motion seeking to exclude evidence of decedent's prior "5150" [Doc. 94], Plaintiffs still try to suggest that this could somehow be admissible with respect to Plaintiffs' federal claims if Defendant officers "should have known". However, the cases Plaintiffs cite as purported authority for this proposition are simply inapposite to the instant case. Ironically, defense counsel handled *Torres v. Madera, 648 F3d 1119 (9th Cir. 2011)* at both the trial and appellate levels. The issue in *Torres* which the officer "should have known" had nothing to due with her failure to check for mental health history, it was instead that she "should have known" that she could mistake her handgun for her Taser when she accidentally shot a prisoner in the backseat of her patrol car.

///

1    Similarly, in *Jensen v. Oxnard, 145 F3d 1078 (9th Cir. 1998),* the Court was
2 dealing with the presumption that an officer "should have known" that he had
3 mistaken a fellow SWAT officer for a suspect. In each of these cases cited by
4 Plaintiffs, the "should have known" addressed a mistake. Even Plaintiffs'
5 reference to *C.B. v. City of Sonoma, 769 F3d 1005 (9th Cir. 2014)* dealt only with
6 the issue of officers failing to ask any questions of an eyewitness coach on the
7 scene regarding a child who had failed to take his medications - it in no way stands
8 for the proposition that information not possessed by officers may be considered in
9 the "objective reasonablness" analysis under the Fourth Amendment. Plaintiffs
10 have not and cannot cite a single authority which supports their proposition that
11 the jury should be permitted to consider facts not confronting the officers at the
12 time as established under *Graham.* As such, the Court has properly excluded
13 consideration of decedent's prior 5150 as to any federal claims.

14    While Plaintiffs further argue that a Fourth Amendment violation may stem
15 from provocation by officers, this is simply another argument with respect to the
16 central question of whether the actions of these officers were "objectively
17 reasonable under the totality of the circumstances". In fact, Defendants are quite
18 confident that Plaintiffs will argue that Officers Cox and Louchren acted
19 unreasonably by somehow provoking the armed attacked by Veronica Canter
20 while Defendants will certainly argue to the contrary. The answer will be up to
21 the jury.

22    Finally, Plaintiffs argue that the purported failure of Defendant officers to
23 recognize Veronica Canter's mental illness is a factor which the jury should be
24 permitted to consider. Once again, this is already listed in both proposed versions
25 of Model Instruction 9.23 as a factor for the jury to consider in their determination
26 of "objective reasonableness".
27 ///
28 ///

B. <u>Fourteenth Amendment Claims.</u>

As addressed in the Pretrial Conference Order, Defendants' Motion to Bifurcate and Defendants' Objections to Plaintiffs' Separate Proposed Jury Instructions, the heightened standard of "deliberate indifference" as to Plaintiffs' separate Fourteenth Amendment claims presents yet another different legal standard for the jury to consider (e.g. "objective reasonableness", "deliberate indifference" and "negligence").

While this could become overwhelmingly confusing to the jury, the good news is that Plaintiffs' Fourteenth Amendment claims are limited to their standing to seek damages for their "loss of familial relations". In other words, since none of the individual Fourteenth Amendment claims of the surviving Plaintiffs involve conduct of the Defendant officers toward them individually, the jury need not consider whether the actions of the Defendant officers was somehow "deliberately indifferent" to their individual rights during Phase One. On the contrary, the only conduct the jury will need to consider during Phase One will be whether the conduct of the officers toward Veronica Canter was "objectively reasonable" and/or "negligent".

As consistently noted by Defendants in all other briefs, if the jury concludes that the actions of the officers was "objectively reasonable" under the Fourth Amendment, then there will be no need to determine whether it could have been "deliberately indifferent" under the higher Fourteenth Amendment standard. *County of Sacramento v. Lewis, 523 U.S. 833 (1998).* If, on the other hand, the jury determines that the conduct of the officers was "unreasonable" under the Fourth Amendment, then and only then would the jury need to undertake a further analysis of whether the actions of the officers were "deliberately indifferent". That inquiry would only become necessary and relevant to determining damages for the surviving Plaintiffs in Phase Three.

///

5

C. <u>Qualified Immunity.</u>

Plaintiffs raise an interesting issue by claiming that Defendants have somehow waived any defense of qualified immunity by failing to file an Answer to the First Amended Complaint. However, a review of the docket actually reveals that Plaintiffs' First Amended Complaint never became operative since the Court took Defendants' 12b(6) motion to the FAC under submission [Doc. 35] and never seems to thereafter have officially ruled on the motion. Thus, while the parties nonetheless thereafter proceeded with the litigation, it would appear that it is Defendants who could actually limit Plaintiffs to their original Complaint which included no state claims, no Fourth Amendment claim and was limited to only a Fourteenth Amendment claim by the parents against the City and Chief Dyer. With respect to that Complaint, Defendants did properly raise qualified immunity as an affirmative defense [#17 in Doc. 6].

However, rather than raise this issue on the eve of trial, Defendants will proceed under the FAC with the understanding that qualified immunity was properly raised and preserved in the original Answer.

D. <u>Negligence Claim</u>

Assuming that the Court is not inclined to reverse itself in limiting Plaintiffs' negligence claims solely to the conduct of the individual officers (i.e. not the City), Defendants do not disagree with the concept that the individual officers owed a general duty of care to Veronica Canter. In that regard, both parties have submitted slightly different versions of the standard CACI instructions 400 and 401 to address this issue.[2]

///

---

[2] Contrary to Plaintiffs' reference to *Lugtu v. CHP*, 26 Cal.4th 703 (2001), the Defendant officers had not created a "special relationship" with Ms. Canter so as to assume any heightened duty not to place her in a position of greater danger than that which she herself created.

As Defendants have noted, Plaintiffs election to retain "negligence" claims not only presents the jury with two very different legal standards which must be very clearly distinguished in the final jury instructions and special verdict, but it also raises issues pertaining to:

- As an apparent objection to Defendants' proposed jury instruction on the discretionary immunity provided by *Cal. Govt. Code § 820.2*, Plaintiffs cite *Hernandez v. Co. of Tulare, 666 F3d 631, 639 (9th Cir. 2012)* which quoted *Barner v. Leeds, 24 Cal 4th 676 (2000)* as if to limit the application to only discretionary policy decisions. However, the Court in *Barner* noted simply that once a Public Defender had exercised the actual discretionary decision to provide representation, the immunity of 820.2 would no longer apply to whether the Public Defender provided competent representation. More recently, the Hon. Judge England in this district has extended the immunity of 820.2 to a public employees "decision whether to perform an optional act". *Buzayan v. Davis, 927 F.Supp.2d 893, 906 (E.D. Cal. 2013)*, relying on *Thompson v Co. of Alameda, 27 Cal.3d 741, 748-49 (1980)*. Thus the most recent authority in this district would support the application of 820.2 to the discretionary decisions Defendant officers made during their handling of this incident.
- In the (unlikely) event of a Plaintiffs' verdict, the basis of liability (i.e. federal vs. state claims) must be kept clearly separated in any Special Verdict in light of the issue of a potential award of attorney's fees stemming from a constitutional violation not available under any state claims.
- Given that Defendants are entitled to consideration of Veronica Canter's own contributory negligence under state law, but not federal law, it will further be critical to differentiate the application of this

defense between the federal and state clams.

Nonetheless, if Plaintiffs insist on pursuing "negligence" claims, it will be necessary to address and resolve all of these corresponding issues.

### 4.     EVIDENTIARY ISSUES.

Fortunately, most of the foreseeable evidentiary issues have already been resolved by way of *limine* motions.  However, it would appear that some uncertainty remains with respect to the application of FPD policies.

In their Trial Brief, Plaintiffs note that Defendants' reference to a quotation from *Whren v. United States, 517 U.S. 806, 815 (1996)* does not appear as indicated in Defendants' supplemental brief re: policies.  Candidly, they are technically correct - the quoted language is actually found in *Roguz v. Walsh, 2013 U.S. Dist. LEXIS 500985, \*22-23 (D.Conn. 2013)* where it is indirectly attributed to the Supreme Court in *Whren*.  Nonetheless, the Supreme Court did hold that local policies are not an appropriate gauge of reasonableness under the Fourth Amendment and should therefore not be utilized in any related analysis.

Plaintiffs do, however, cite *Drummond v. Anaheim, 343 F3d 1059 (9th Cir. 2003)* as if it supports the application of local policies in analyzing reasonableness under the Fourth Amendment.  While the Court in *Drummond* referenced local policies in denying summary judgment, it did not address the admissibility of such policies at trial.  Moreover, the issue in *Drummond* was whether officers had violated department policy by utilizing a prohibited restraint procedure.  The FPD polices at issue in the instant case involve whether Defendant officers properly exercised their discretion under policies which arguably never applied.

Similarly, while Plaintiffs also rely on language from *Torres, supra* to suggest that local training could be considered in analyzing federal claims, the issue in *Torres* was whether the officer's ongoing training should have prevented her from mistaking her handgun for her Taser.  As more fully set forth in Defendants' supplemental brief on this policy issue, Defendants understand that

FPD policies which existed at the time may be introduced as evidence. Defendants' concern, however, is that it be made clear to the jury that such policies may not be used to establish a legal standard or duty under either federal or state law.

### 5. CONCLUSION.

Although the issues in this case have somehow become more complex than most similar cases, Defendants appreciate the Court's efforts to organize the trial in such a way as to keep matters as straightforward as possible and minimizing confusion for the jury.

Notwithstanding the complexity of the legal issues presented, this is a tragic case for all parties and Defendants look forward to a trial which will hopefully bring closure to all parties regardless of the outcome.

DATED: June 6, 2016                           FERGUSON, PRAET & SHERMAN
                                              A Professional Corporation

                                              By:  /s/   Bruce D. Praet
                                                   Bruce D. Praet
                                                   Attorneys for Defendants